1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
4  KRISTIN BENESKI, WSBA #45478
   ANDREW R.W. HUGHES, WSBA #49515
5  CRISTINA SEPE, WSBA #53609
   *Assistant Attorneys General*
6  EMMA GRUNBERG, WSBA #54659
7  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
8  KARL D. SMITH, WSBA #41988
   *Deputy Solicitors General*
9  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
10 (206) 464-7744

11

12

13                **UNITED STATES DISTRICT COURT**
                 **EASTERN DISTRICT OF WASHINGTON**
14                        **AT YAKIMA**

15 | STATE OF WASHINGTON, et al., | NO. 1:20-cv-03127-SAB |

16 |       Plaintiffs, | PLAINTIFFS' MOTION FOR |
                                    PRELIMINARY INJUNCTION
17    v.

18  DONALD J. TRUMP, et al.,          NOTED FOR: September 17,
                                      2020 at 10:00 a.m.
19          Defendants.               *With Oral Argument*

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ................................................................... 2

    A.  The Postal Service's Statutory Duty to Provide Efficient Mail Service and the Statutory Prerequisites for Service Changes ................. 2

    B.  Recent "Transformative" Changes Affecting Postal Service Levels Nationwide, Made Without Notice and Hearing ................................... 4

        1.  The July 2020 "Leave Mail Behind" policy .................................. 4

           a.  The policy is made effective without notice and hearing .......... 4

           b.  The immediate delays caused by the "Leave Mail Behind" policy ................................................................................. 8

        2.  The Postal Service's decision to no longer treat election mail as First Class Mail ................................................................... 11

        3.  The removal of hundreds of mail processing and sorting machines ................................................................................. 15

    C.  The Widespread Delays and Ensuing Harms Already Caused by Postal Service Policy Changes ................................................................ 17

        1.  Residents unable to mail and receive medications and other time-critical items ............................................................... 17

        2.  States unable to timely send and receive legally required communications for the administration of benefits and other programs ................................................................................. 19

        3.  Disenfranchisement of voters caused by mail delays .................... 21

III. ARGUMENT ..................................................................................... 24

    A.  Standard of Review ........................................................................... 24

    B.  The States Are Likely to Succeed on the Merits ................................. 24

        1.  The States have standing ............................................................. 24

        2.  The States are likely to succeed on their Section 3661 claims ...... 26

           a.  Under Section 3661, Defendants were required to seek an advisory opinion from the PRC prior to implementing their "Transformative Initiative" ................................................... 26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

|     |     |     |     |                                                                                                                              |     |
|-----|-----|-----|-----|------------------------------------------------------------------------------------------------------------------------------|-----|
|     |     | b.  |     | The Court has jurisdiction to require the Postal Service to comply with Section 3661                                          | 31  |
|     |     |     | (1) | The Court has jurisdiction over Defendants' *ultra vires* actions                                                            | 31  |
|     |     |     | (2) | Even if *ultra vires* review were unavailable, mandamus would be appropriate                                                 | 35  |
|     | 3.  |     |     | The States are likely to succeed on their claims that the changes at issue unconstitutionally infringe on States' authority to regulate elections and the people's right to vote | 39  |
|     |     | a.  |     | Strict scrutiny applies                                                                                                      | 40  |
|     |     |     | (1) | The changes significantly interfere with the constitutional authority of States                                             | 40  |
|     |     |     | (2) | The operational changes create substantial burdens on the right to vote                                                     | 45  |
|     |     |     | (3) | The severe burdens on State and individual rights warrant strict scrutiny                                                   | 47  |
|     |     |     | (4) | The discriminatory nature of the operation changes also requires strict scrutiny                                            | 48  |
|     |     | b.  |     | The policy changes do not further a compelling government interest and are not narrowly tailored                            | 51  |
| C.  |     |     |     | The States Will Suffer Irreparable Injury Absent an Injunction                                                              | 52  |
| D.  |     |     |     | The Balance of Equities and Public Interest Strongly Favor the States                                                       | 54  |
| E.  |     |     |     | Nationwide Injunctive Relief Is Necessary and Appropriate                                                                   | 56  |
| IV. |     |     |     | CONCLUSION                                                                                                                   | 58  |

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
  458 U.S. 592 (1982)...........................................................................25

*Am. Party of Tex. v. White*
  415 U.S. 767 (1974).............................................................................42

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*
  No. CIV.A.06 726 CKK, 2007 WL 2007578 (D.D.C. July 6, 2007)...............34

*Anderson v. Celebrezze*
  460 U.S. 780 (1983).............................................................................48

*Arce v. Douglas*
  793 F.3d 968 (9th Cir. 2015) ..............................................................50

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*
  576 U.S. 787 (2015)............................................................................42

*Barron v. Reich*
  13 F.3d 1370 (9th Cir. 1994) ...............................................................36

*Buchanan v. U.S. Postal Serv.*
  375 F. Supp. 1014 (N.D. Ala. 1974), *issuance of preliminary injunction*
  *aff'd in part, vacated in part on other grounds by Buchanan v.*
  *U.S. Postal Serv.*, 508 F.2d 259, 266–67 (5th Cir. 1975)............... 25, 37, 52, 57

*Buchanan v. U.S. Postal Service*
  508 F.2d 259 (5th Circ. 1975) ................................................. passim

*California v. Azar*
  911 F.3d 558 (9th Cir. 2018) ...............................................................54

*Cardona v. Oakland Unified Sch. Dist., Cal.*
  785 F. Supp. 837 (N.D. Cal. 1992)......................................................53

*Chiafalo v. Washington*
  140 S. Ct. 2316 (2020).........................................................................43

*City of Sausalito v. O'Neill*
  386 F.3d 1186 (9th Cir. 2004) .............................................................25

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*Combined Communications Corp. v. U.S. Postal Service*
  891 F.2d 1221 (6th Cir. 1989) ................................................................ 31, 32, 33

*Common Cause/New York v. Brehm*
  432 F. Supp. 3d 285 (S.D.N.Y. 2020) ..............................................................47

*Crawford v. Marion Cnty. Election Bd.*
  553 U.S. 181 (2008).........................................................................................48

*D.C. v. U.S. Dep't of Agric.*
  444 F. Supp. 3d 1 (D.D.C. 2020)....................................................................58

*Doran v. Salem Inn, Inc.*
  422 U.S. 922 (1975).........................................................................................54

*Drake's Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014) ................................................................. 24, 54

*Duguid v. Facebook, Inc.*
  926 F.3d 1146 (9th Cir. 2019) .........................................................................51

*E. Bay Sanctuary Covenant v. Barr*
  964 F.3d 832 (9th Cir. 2020) ...........................................................................56

*Ehrlich v. United States*
  No. 17-01245-RAJ, 2018 WL 3608404 (W.D. Wash. July 26, 2018).............35

*Erickson v. U.S. Post Office*
  250 F. A'ppx 757 (8th Cir. 2007).....................................................................35

*Fla. Democratic Party v. Scott*
  215 F. Supp. 3d 1250 (N.D. Fla. 2016) ...........................................................48

*Gonzalez v. Arizona*
  677 F.3d 383 (9th Cir. 2012), *aff'd sub nom.*
  *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ....................42

*Gordon v. Holder*
  721 F.3d 638 (D.C. Cir. 2013).........................................................................55

*Gregory v. Ashcroft*
  501 U.S. 452 (1991).........................................................................................41

*Gulf Coast Mar. Supply, Inc. v. United States*
  218 F. Supp. 3d 92 (D.D.C. 2016)...................................................................55

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*Hadley v. Junior Coll. Dist. of Metro, Kansas City, Mo.*
   397 U.S. 50 (1970).........................................................................45

*Harper v. Virginia State Bd. of Elections*
   383 U.S. 663 (1966).......................................................................48

*Harris v. Bd. of Supervisors, Los Angeles Cnty.*
   366 F.3d 754 (9th Cir. 2004) ........................................................53

*Hawai'i v. Trump*
   859 F.3d 741 (9th Cir. 2017), *vacated on other grounds by*
   *Trump v. Hawai'i*, 138 S. Ct. 377 (2017) ...................................55

*Heath v. Alabama*
   474 U.S. 82 (1985).........................................................................25

*Kennecott Copper Corp., Nev. Mines Div., McGill, Nev. v. Costle*
   572 F.2d 1349 (9th Cir. 1978) ......................................................36

*LeMay v. U.S. Postal Serv.*
   450 F.3d 797 (8th Cir. 2006) ........................................................35

*Libertarian Party of Ohio v. Blackwell*
   462 F.3d 579 (6th Cir. 2006) ........................................................47

*Lorillard v. Pons*
   434 U.S. 575 (1978).......................................................................34

*Lubin v. Panish*
   415 U.S. 709 (1974).......................................................................42

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992).......................................................................26

*M.R. v. Dreyfus*
   697 F.3d 706 (9th Cir. 2012) ........................................................52

*Martinez v. Richardson*
   472 F.2d 1121 (10th Cir. 1973) ....................................................38

*McCarthy v. Madigan*
   503 U.S. 140 (1992)................................................................ 38, 39

*Melendres v. Arpaio*
   695 F.3d 990 (9th Cir. 2012) ........................................................55

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*Mittleman v. Postal Regulatory Comm'n*
  757 F.3d 300 (D.C. Cir. 2014) ..................................................31

*Nat'l Ass'n of Postal Sup'rs v. U. S. Postal Serv.*
  602 F.2d 420 (D.C. Cir. 1979) ..................................................30

*Obama for America v. Husted*
  697 F.3d 423 (6th Cir. 2012) .......................................... 47, 53, 55

*Paher v. Cegavske*, --- F. Supp. 3d ----
  No. 320CV00243MMDWGC, 2020 WL 2089813
  (D. Nev. Apr. 30, 2020) ..........................................................41

*Patel v. Reno*
  134 F.3d 929 (9th Cir. 1997) ..................................................36

*S. Cal. Edison v. U.S. Postal Serv.*
  134 F. Supp. 3d 311 (D.D.C. 2015) ..........................................33

*Sanchez v. Cegavske*
  214 F. Supp. 3d 961 (D. Nev. 2016) ........................................53

*Schlemm v. Wall*
  784 F.3d 362 (7th Cir. 2015) ..................................................51

*Sears, Roebuck & Co. v. U.S. Postal Serv.*
  844 F.3d 260 (D.C. Cir. 2016) ................................................31

*Smiley v. Holm*
  285 U.S. 355 (1932) ..............................................................41

*State of N.J. Dep't of Env't Prot. v. U.S. Env't Prot. Agency*
  626 F.2d 1038 (D.C. Cir. 1980) ..............................................57

*Susan B. Anthony List v. Dreihaus*
  573 U.S. 149 (2014) ..............................................................26

*Tashjian v. Republican Party of Conn.*
  479 U.S. 208 (1986) ........................................................ 41, 45

*U.S. ex rel. Rahman v. Oncology Assocs., P.C.*
  198 F.3d 502 (4th Cir. 1999) .............................................. 38, 39

*U.S. Steel Corp. v. U.S. E.P.A.*
  595 F.2d 207 (5th Cir. 1979) ..................................................57

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*United States v. Oakland Cannabis Buyers' Co-op.*
   532 U.S. 483 (2001)...........................................................................55

*United States v. Walker*
   409 F.2d 477 (9th Cir. 1969) .......................................................36

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*
   429 U.S. 252 (1977).........................................................................50

*Voting Rights Coal. v. Wilson*
   60 F.3d 1411 (9th Cir. 1995) .......................................................25

*Washington v. Trump*
   441 F. Supp. 3d 1101 (W.D. Wash. 2020) ..............................54

*Washington v. Trump*
   847 F.3d 1151, 1168 (9th Cir. 2017) .......................................55

*Washington v. U.S. Dep't of Homeland Sec.*
   408 F. Supp. 3d 1191 (E.D. Wash. 2019).................................54

*Winter v. Nat. Res. Def. Council, Inc.*
   555 U.S. 7 (2008)................................................................... 24, 52

*Yick Wo v. Hopkins*
   118 U.S. 356 (1886)........................................................................45

## Constitution

U.S. Const., amend. X ........................................................................ 41

U.S. Const., amend. XVII ................................................................. 25

U.S. Const., art. I, § 4......................................................................... 25, 40

U.S. Const., art. II, § 1........................................................................ 25, 43

## Statutes

39 U.S.C. § 101 ............................................................... 2, 3, 54, 56

39 U.S.C. § 403 ................................................................... 3, 54, 56

39 U.S.C. § 409 ..................................................................... 33, 34

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

| | | |
|---|---|---|
| 28 U.S.C. § 1339 | ................................................................ | 33 |
| 28 U.S.C. § 1361 | ................................................................ | 35 |
| 39 U.S.C. § 3623 | ................................................................ | 32 |
| 39 U.S.C. § 3661 | ................................................................ | passim |
| 39 U.S.C. § 3662 | ................................................................ | passim |
| 39 U.S.C. § 3691 | ................................................................ | 3 |
| 52 U.S.C. § 20302 | ................................................................ | 42 |
| 52 U.S.C. §§ 20501–20511 | ................................................................ | 42 |
| Colo. Rev. Stat. § 1-4-301 | ................................................................ | 43 |
| Colo. Rev. Stat. § 1-7.5-104 | ................................................................ | 43, 44 |
| Colo. Rev. Stat. § 1-7.5-107 | ................................................................ | 46 |
| Conn. Gen. Stat. § 9-135 | ................................................................ | 43 |
| Conn. Gen. Stat. § 9-174 | ................................................................ | 46 |
| Conn. Gen. Stat. § 9-175 | ................................................................ | 43 |
| 10 Ill. Comp. Stat. 5/19-1 | ................................................................ | 43 |
| 10 Ill. Comp. Stat. 5/21-1 | ................................................................ | 43 |
| Md. Code, Elec. Law § 8-301 | ................................................................ | 25 |
| Md. Code, Elec. Law § 8-504 | ................................................................ | 43 |
| Md. Code, Elec. Law § 9-304 | ................................................................ | 43 |
| Mich. Comp. Laws § 168.43 | ................................................................ | 43 |
| Mich. Comp. Laws § 168.759 | ................................................................ | 43 |
| Mich. Comp. Laws § 168.764 | ................................................................ | 46 |
| Minn. Stat. § 208.02 | ................................................................ | 43 |
| Minn. Stat. §§ 203B.02, 204B.45 | ................................................................ | 43 |
| Minn. Stat. §§ 203B.08, 204B.45-.46 | ................................................................ | 46 |
| N.M. Stat. § 1-15-4 | ................................................................ | 43 |

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

viii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

N.M. Stat. § 1-6-10 ................................................................................. 46

N.M. Stat. § 1-6-4 ................................................................................... 43

Nev. Rev. Stat. § 293.309 ........................................................................ 43

Nev. Rev. Stat. § 298.065 ........................................................................ 43

Or. Rev. Stat. § 248.360 ........................................................................... 43

Or. Rev. Stat. § 254.465 .................................................................... 43, 44

Or. Rev. Stat. § 254.470 ........................................................................... 46

R.I. Gen. Laws § 17-20-1 ......................................................................... 43

R.I. Gen. Laws § 17-20-2 ......................................................................... 46

R.I. Gen. Laws § 17-40-10 ....................................................................... 43

Va. Code § 24.2-202 ................................................................................. 43

Va. Code § 24.2-705 ................................................................................. 46

Va. Code § 24.2-707 ................................................................................. 43

Vt. Stat. tit. 17, § 2543 ............................................................................. 43

Vt. Stat. tit. 17, § 2731 ............................................................................. 43

Wash. Rev. Code § 29A.04.321 ............................................................... 25

Wash. Rev. Code § 29A.40.091 ........................................................ 43, 44

Wash. Rev. Code § 29A.56.320 ............................................................... 43

Wis. Stat. § 6.87 ...................................................................................... 46

Wis. Stat. § 8.25 ...................................................................................... 43

Wis. Stat. §§ 6.20, 6.85 ........................................................................... 43

## **Other Authorities**

H.R. Rep. No. 108-672 (2004) .................................................................. 34

S. Rep. No. 108-318 (2004) ..................................................................... 34

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

ix

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# I.    INTRODUCTION

The United States Postal Service is an essential American institution, authorized by the Constitution, created by the first Congress, serving every part of our country, and overwhelmingly admired by Americans of every background. It is woven into the fabric of American life, reliably delivering our correspondence, our medications, our payments, and, increasingly, our ballots.

Because the Postal Service plays such a vital role, Congress has long required that any significant change in postal services undergo a thorough review by the Postal Regulatory Commission and include an opportunity for public comment before taking effect. 39 U.S.C. § 3661. This process helps to ensure that changes are fully thought through and to avoid unintended consequences.

Ignoring this requirement, newly appointed Postmaster General Louis DeJoy has made a number of precipitous changes that, by his own admission, have significantly affected postal service. While DeJoy claimed to halt some of these changes—such as the removal of mail sorting equipment—the day the Plaintiff States filed this lawsuit, he has persisted with at least two others.

First, DeJoy adopted and continues to enforce a "Leave Mail Behind" policy, requiring mail carriers and delivery trucks to leave at set times, regardless of whether the mail is actually ready, and prohibiting letter carriers from making return trips to distribution centers as necessary to complete timely mail delivery. This policy has slowed mail delivery substantially nationwide.

Second, although an unprecedented number of citizens will rely on voting by mail this year, DeJoy has abandoned the Postal Service's longstanding commitment to treat all Election Mail under First Class delivery standards. This will mean that ballots, registration forms, and other Election Mail that States send

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

to voters will be delivered much more slowly than in the past. The Postal Service itself has threatened nearly every State that this may disenfranchise some voters.

Under the plain language of 39 U.S.C. § 3661, the Postal Service had to submit these changes to the Postal Regulatory Commission prior to implementing them. This never happened.

These changes also violate the Constitution, which guarantees to States the power to regulate elections and to individuals the right to vote. Without any compelling or even meaningful justification, DeJoy's changes interfere with State authority to administer elections and threaten broad disenfranchisement.

The changes are not only illegal, but are also causing irreparable harm, including delays in delivery of time-sensitive materials from medications to legal notices to ballots. There is no meaningful justification for these harms, so the public interest and equities tip sharply in the States' favor. The States therefore respectfully ask that this Court issue a preliminary injunction barring continued implementation of these changes before they can further interfere with Americans' daily lives and the November 2020 election.

## II.    STATEMENT OF FACTS

### A.    The Postal Service's Statutory Duty to Provide Efficient Mail Service and the Statutory Prerequisites for Service Changes

The Postal Service is a "basic and fundamental service provided to the people . . . , authorized by the Constitution, created by Act of Congress, and supported by the people," obliged to "bind the Nation together through the personal, educational, literary and business correspondence of the people." 39 U.S.C. § 101(a). It delivers over 470 million pieces of mail each day and must serve "as nearly as practicable the entire population of the United States."

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

39 U.S.C. § 403.[1] In setting policies, the Postal Service shall "give the highest consideration to the requirement for *the most expeditious* collection, transportation, and delivery of important letter mail." *Id.* § 101(e) (emphasis added); *see also id.* § 3691(b) (service standards must "reasonably assure . . . delivery reliability, speed and frequency consistent with reasonable rates and best business practices"); *id.* § 403 (Postal Service must "plan, develop, promote, and provide adequate and efficient postal services").

When the Postal Service determines that there should be "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable time *prior to* the effective date of such proposal, to the Postal Regulatory Commission requesting an advisory opinion on the change." *Id.* § 3661(b) (emphasis added). Following a hearing at which the interests of users of the mail and the general public are represented, the Commission issues a written opinion under the Postal Service's guiding policies. *Id.* § 3661(c).

The Postal Service's mandate has taken on even greater significance during the COVID-19 pandemic. More people have opted to obtain prescription medications by mail.[2] And many States expect a record-breaking volume of mail-in voting for the November 2020 election.[3] Roughly three-quarters of all

---

[1] *Postal Facts: One Day*, USPS.com, https://facts.usps.com/one-day/.

[2] Jared S. Hopkins, *Mail-Order Drug Delivery Rises During Coronavirus Lockdown*, Wall St. J. (May 12, 2020), https://on.wsj.com/355Bc2V.

[3] Juliette Love, Matt Stevens & Lazaro Gamio, *Where Americans Can Vote by Mail in the 2020 Election*, N.Y. Times (updated Aug. 14, 2020), https://nyti.ms/3g73JH4.

PLAINTIFFS' MOTION FOR                              3
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

voters—over 160 million people—are eligible to receive a ballot by mail for the 2020 general election.[4] States have already experienced surges in vote-by-mail ballot requests and historic levels of mail-in voting during recent primaries. *See, e.g.*, Benson Decl. ¶¶ 14–15; Gough Decl. ¶¶ 12–14; Merrill Decl. ¶ 13; Piper Decl. ¶¶ 15–16; Rock Decl. ¶ 23; Simon Decl. ¶ 7; Yarbrough Decl. ¶¶ 12–14.

**B.     Recent "Transformative" Changes Affecting Postal Service Levels Nationwide, Made Without Notice and Hearing**

**1.     The July 2020 "Leave Mail Behind" policy**

**a.     The policy is made effective without notice and hearing**

Louis DeJoy became Postmaster General in June 2020. In July, he announced "immediate, lasting, and impactful changes in our operations and our culture"—changes he later described as "transformative"—without submitting a proposal to the Postal Regulatory Commission for a hearing.[5] The Postal Service warned that the changes would be "challenging, as we seek to change our culture and move away from past practices."[6] They were made a few months before a presidential election and in the middle of a global pandemic, with no analysis on how they would affect voters or people relying on delivery of time-critical items.[7]

---

[4] *Id.*

[5] *Mandatory Stand-Up Talk: All Employees*, July 10, 2020 (Ex. A); *Protecting the Timely Delivery of Mail, Medicine, and Mail-in Ballots*, U.S. House Comm. on Oversight & Reform, Aug. 24, 2020, https://bit.ly/2EsSDPW ("House Testimony") (video at 4:43:45); *see generally* 39 U.S.C. § 3661(b).

[6] *Mandatory Stand-Up Talk*, *supra* n.5 (Ex. A).

[7] *Examining the Finances and Operations of the U.S. Postal Service During COVID-19 and Upcoming Elections*, U.S. Senate Comm. on Homeland Sec. &

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

The new policy mandates that all trips, including delivery and to processing centers, must depart on time; that late trips and extra trips are "no longer authorized or accepted"; and that mail carriers "must begin on time, leave for the street on time, and return on time."[8] Mail carriers are instructed to leave mail behind on the workroom floor if taking that mail would require them to leave later than scheduled.[9] DeJoy justified the "Leave Mail Behind" policy based on an Office of the Inspector General report that 20% of transportation trips left mail processing facilities late.[10] But this report did not recommend eliminating late trips; it instead offered five recommendations to improve efficiency and management oversight.[11]

The memorandum outlining these changes admitted that they would likely result in delays: "One aspect of these changes that may be difficult for employees is that—temporarily—we may see mail left behind or mail on the workroom floor or docks . . . which is not typical."[12] According to an internal Postal Service document: "If we cannot deliver all the mail due to call offs or shortage of people and you have no other help, the mail will not go out[.]"[13]

---

Gov't Affairs, Aug. 21, 2020, https://bit.ly/2QoXAM9 ("Senate Testimony") (video at 1:21:15).

[8] *Mandatory Stand-Up Talk*, *supra* n.5 (Ex. A).

[9] *Id.*; *PMGs Expectations and Plan* (July 2020) (Ex. B).

[10] House Testimony, *supra* n.5 (video at 39:40)

[11] *U.S. Postal Service's Processing Network Optimization and Service Impacts*, USPS Office of the Inspector General (June 16, 2020), https://bit.ly/32f4RoB (Ex. C).

[12] *Mandatory Stand-Up Talk*, *supra* n.5 (Ex. A).

[13] *PMGs Expectations and Plan*, *supra* n.9 (Ex. B).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Reports from across the country confirm that this policy is being implemented and is delaying delivery. People have reported delays in receiving time-sensitive medications, businesses that rely on the mail have reported delays harming their finances, and state agencies have seen delays in delivery of important documents and benefits.[14] In Tennessee, trucks are leaving sorting facilities for cross-country trips "completely empty," because the new policy "will not allow holding a truck for even five minutes so it can be loaded with mail."[15] As one postal worker in Nashville noted, Express and Priority Mail—including time-critical items such as legal documents and cremated remains—are being left behind because trucks have already left.[16]

Explaining the on-the-ground changes wrought by this policy, experienced postal workers in several States testify that, previously, mail carriers would pick up outgoing mail and bring it back to the station, where it would be put on a truck to a regional processing center that evening to be postmarked and sorted. *See* Yao Decl. ¶ 4; Cogan Decl. ¶ 13. But since DeJoy's changes, trucks must leave by a

---

[14] *See, e.g.*, Dart Decl. ¶¶ 9–11; Geissel Decl. ¶ 6; Hermes Decl. ¶¶ 7–8; Livermore Decl. ¶¶ 4–6; Okanlawon Decl. ¶¶ 6–8; Olsen Decl. ¶ 11; Sturdivant Decl. ¶ 4; White Decl. ¶ 4 (prescription delays); Rosenbaum Decl. ¶ 13; Rumbley Decl. ¶¶ 4–5 (other mail delays); Davidson Decl. ¶¶ 6–12; Mitchell Decl. ¶ 6; Stembridge Decl. ¶ 8; Williams Decl. ¶ 5 (harms to business and finances); Cully Decl. ¶ 6; Huff Decl. ¶¶ 5–6; Peterson Decl. ¶ 6 (harms to state agencies).

[15] Ben Hall & Kevin Wisniewski, *Postal trucks sometimes travel across country - with no mail - after USPS cuts*, News Channel 5 (Aug. 24, 2020), https://bit.ly/3lVQg9i.

[16] *Id.*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

firm deadline, without exception—both to take outgoing mail to a processing center at the end of the day and to take postmarked, sorted mail to a station for delivery in the morning. Yao Decl. ¶ 5; Cogan Decl. ¶ 12 Trucks bound for processing centers no longer have discretion to wait if a mail carrier is about to return with a large bundle of outgoing mail; trucks leaving processing centers cannot wait for mail that is nearly ready; in both cases, that mail sits waiting for at least another day. Yao Decl. ¶¶ 6–8; Cogan Decl. ¶¶ 12–13. These changes were announced and implemented with "very little notice." Cogan Decl. ¶ 14. On-the-ground reports from Michigan, Minnesota, Wisconsin, and other States confirm the same: considerable amounts of mail are left to await the next day's delivery. *See* Puhalski Decl. ¶¶ 9–10; Levy Decl. ¶ 14; Anthonasin Decl. ¶¶ 14–21; Hartwig Decl. ¶¶ 5–7.

The same day the States filed this lawsuit—August 18, 2020—DeJoy announced the suspension of some operational changes to the Postal Service, including the nationwide removal of hundreds of mail processing and sorting machines, the removal of mail collection boxes, and the reduction in post office retail hours.[17] DeJoy's announcement did not address the "Leave Mail Behind" policy, and he has confirmed that this policy remains in place and will remain in place through the November election.[18]

---

[17] *See Postmaster General Louis DeJoy Statement*, USPS, Aug. 18, 2020, https://bit.ly/320luE4 (Ex. D).

[18] *See id.*; Senate Testimony, *supra* n.7; House Testimony, *supra* n.5.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

### b. The immediate delays caused by the "Leave Mail Behind" policy

Internal Postal Service documents foresaw that this change would cause delays, but assured that it would "address root causes of these delays and adjust the very next day," predicting: "As we adjust to the ongoing pivot, which will have a number of phases, we know that operations will begin to run more efficiently and that delayed mail volumes will soon shrink significantly."[19]

But as DeJoy has since acknowledged, this "transformative" change has had—in his own words—"unintended consequences that impacted [the Postal Service's] overall service levels."[20] The Postal Service's own data vividly display this. The following charts, from a briefing prepared for DeJoy, show how on-time delivery, which had remained relatively steady despite the pandemic, plummeted in the second half of July directly following implementation of the "Leave Mail Behind" policy: from approximately 92% to 84% for First Class mail, and approximately 90% to 83% for Marketing Mail.[21]

---

[19] *Mandatory Stand-Up Talk*, *supra* n.5 (Ex. A).

[20] *Path forward*, LINK (Aug. 13, 2020), https://link.usps.com/2020/08/13/path-forward-2/ (Ex. E).

[21] *Service Performance Measurement: PMG Briefing*, USPS (Aug. 12, 2020), https://bit.ly/359uKb5 (Ex. F).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744



*Chart 1*

*Chart 2*

DeJoy acknowledged in his Congressional testimony that the "Leave Mail Behind" policy significantly contributed to this drop.[22]

_____

[22] House Testimony, *supra* n.5 (at 4:45:35–43).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Data from the first three weeks in August suggest that on-time performance recovered somewhat from its lowest point in mid-July, but—especially for First Class mail—remained significantly lower (by at least five percent) when compared to performance levels before the changes—representing millions of pieces of mail that no longer arrive at their destinations on time.[23]



*Chart 3*

As for Election Mail, including ballots, DeJoy told Congress that he was unable to provide separated performance data.[24]

---

[23] *Congressional Briefing: Transportation & Service Performance Updates* (Aug. 31, 2020), https://bit.ly/3lYmCjQ (Ex. G).

[24] Letter from Louis DeJoy to Chairman Johnson et al. (Aug. 31, 2020), https://bit.ly/3btr319 (Ex. H).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## 2. The Postal Service's decision to no longer treat election mail as First Class Mail

In a separate policy change that will substantially slow the delivery of Election Mail—such as ballots and voter registration forms—nationwide, the Postal Service has decided to no longer treat all Election Mail under First Class service standards. According to the former Chair of the Postal Regulatory Commission, Ruth Goldway, this represents "a very concerning change in USPS policy." Goldway Decl. ¶ 5.

Prior to this year, the Postal Service's longstanding policy has been to handle Election Mail under delivery standards applicable to First Class mail, regardless of the paid rate. Goldway Decl. ¶¶ 7, 9; *see also* Benson Decl. ¶¶ 9–10 (Michigan Secretary of State confirming that "[h]istorically, the USPS has worked with the state and clerks to ensure that election mail is marked and receives expedited service regardless of the class of mail" and that USPS did not previously ask Michigan to send voter ballot envelopes by First Class Mail); Griswold Decl. ¶ 13; Merrill Decl. ¶ 20; Yao Decl. ¶ 9. The Postal Service's documents confirm this: an Inspector General's report on the 2018 election found that 95.6% of election and political mail was delivered within First Class service standards, and Postal Service managers confirmed that they treated all Election Mail as First Class mail.[25] And in its discovery responses, the Postal Service admits that it "has several longstanding practices of prioritizing the expeditious processing and delivery of

---

[25] *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections*, USPS Office of the Inspector General (Nov. 4, 2019), https://bit.ly/3bxYm2R (Ex. I).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

election mail," though it nonetheless denies that Election Mail was treated like First Class mail.[26]

The Postal Service's prior policy ensured that Election Mail has historically been delivered in a timely manner.[27] Even though States typically pay the much lower nonprofit Marketing Mail rates for Election Mail—20 cents compared to 55 cents for First Class—the Postal Service has nonetheless treated that mail under the considerably faster First Class service standards: 2 to 5 days, rather than 3 to 10 days for Marketing Mail. Goldway Decl. ¶¶ 6–9. The actual distinction is even greater, because First Class mail is delivered on time at higher rates than Marketing Mail; according to performance reports, between April 1 and June 30, 2020, the Postal Service delivered between 81 and 95 percent of domestic First Class mail on time, and more than 98 percent no more than three days late—meaning that nearly 100 percent of First Class mail was delivered within eight days of mailing. *Id*. ¶¶ 10–11 & Ex. A. By contrast, as much as 10 percent of Marketing Mail took longer than 13 days to deliver. *Id.* ¶ 12 & Ex. A. And as the charts above demonstrate, performance has since dropped sharply.[28]

Despite these delays, this year the Postal Service indicated that it will no longer meet First Class service standards for Election Mail unless States pay First Class postage fees, nearly tripling the cost of postage. Goldway Decl. ¶ 4.

---

[26] *See* Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents, at 13 (Interrogatory 5) (Ex. J).

[27] *State and Local Election Mail – User's Guide*, USPS (Jan 2020), https://bit.ly/2QWUEX4 (Ex. K).

[28] *Service Performance Measurement*, *supra* n.28 (Ex. F).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

In July 2020, the Postal Service warned election officials in 46 States and the District of Columbia that States must now pay First Class postage to ensure timely ballot delivery to voters.[29] If states choose instead to pay for Marketing Mail, the Postal Service warned that this "will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail."[30]

During his Congressional testimony, when asked whether the Postal Service would continue to treat Election Mail under First Class service standards or better, DeJoy was vague: "Our process is to do that physically . . . First Class mail is a classification of mail, and then we're talking about a physical process. So, we could advance mail in front of First Class, we'd still not call it First Class mail."[31] Yet DeJoy was unable to provide specific details regarding the Postal Service's current policy on Election Mail, claiming that the Postal Service was "just putting these committees together," and he refused to commit to submitting a written statement of policy to Congress.[32]

The Postal Service has since made clear that it will not treat Election Mail as First Class mail.[33] This refusal is confirmed by recent internal and public Postal

---

[29] Letters from Thomas J. Marshall to States (July 2020), *available at:* https://wapo.st/2Feeqe3 (Ex. L).

[30] *See, e.g.*, Letter from Thomas J. Marshall to Washington Secretary of State Kim Wyman (July 31, 2020) (Ex. M).

[31] House Hearing, *supra* n.5 (video at 3:35:47–3:36:16).

[32] Senate Hearing, *supra* n.7 (video at 1:07:10–1:07:45); House Hearing, *supra* n.5 (video at 2:57:50–2:58:30, 3:32:20–3:36:24).

[33] *See* Discovery Responses, *supra* n.26, at 12 (Interrogatory 5) (Ex. J).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION NO. 1:20-CV-03127-SAB

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Service documents stating that Election Mail will no longer be treated under First Class service standards. For example, as of September 9, 2020, the Postal Service website warned election officials that "[u]sing USPS Marketing Mail® service will result in slower delivery times and *may increase the risk that voters will not receive their ballots in time*[.]"[34] An August 13, 2020 internal presentation states that "Election Mail sent as Marketing Mail is not upgraded to First Class service."[35] In discovery, the Postal Service confirmed that it will not treat Election Mail paid at the Marketing Rate as First Class Mail, although it represented that it historically has "[d]evoted excess First-Class Mail processing capacity to election mail" to meet First Class Service standards.[36] Of course, this year the Postal Service has substantially *reduced* its mail processing capacity, further calling into question its ability to follow its past practice.[37]

As of September 9, 2020, DeJoy has not yet submitted a written statement of policy to Congress clarifying the Postal Service's plans for treatment of Election Mail in the upcoming election, which is now less than eight weeks away.

---

[34] *Election Mail*, USPS.com, https://about.usps.com/what/government-services/election-mail/ (last visited Sept. 9, 2020) (Ex. N) (emphasis added).

[35] *AIM Pacific Area Virtual Meeting*, USPS (Aug. 13, 2020), https://bit.ly/3lvTS1A (Ex. O).

[36] *See* Discovery Responses, *supra* n.26, at 13 (Interrogatory 5) (Ex. J).

[37] *See* Letter from Rickey R. Dean to Mark Dimondstein (June 17, 2020), *available at:* https://bit.ly/3m04UMD (identifying over 600 sorting machines to be removed by September 30) (Ex. P); Equipment Reduction (May 15, 2020), available at: https://bit.ly/3m3YyMu (Ex. Q).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

### 3.    The removal of hundreds of mail processing and sorting machines

Earlier this summer, the Postal Service began to implement plans to remove more than 600 machines used to organize and sort mail[38]—each with the capacity to process tens of thousands of pieces of mail, including ballots, per hour—by the end of September. Cogan Decl. ¶¶ 8–9; Combs Decl. ¶¶ 5–8; Czubakowski Decl. ¶¶ 5–10; Levy Decl. ¶¶ 8–10; First Whitney Decl. ¶ 5. This action effectively decommissions 10 percent of the Postal Service's sorting machines, with the combined capacity of sorting 21.4 million pieces of mail per hour.[39] Notably, data analysis shows that the machines removed or scheduled for removal are overwhelmingly located in counties that voted Democratic in the last presidential election. Urizar-Hunter Decl. ¶¶ 10–13. Some of these removals left local processing centers with only one machine available and no redundancy: in New Hampshire, for example, after four sorting machines were taken out of service at the Manchester facility, the facility is forced to halt sorting and delay the processing of mail when the single remaining machine experiences failures.[40]

DeJoy's August 18, 2020 statement indicated that the Postal Service would suspend further machine removals until after the election, and the Postal Service has since claimed that it attempted to convey this instruction to regional directors

---

[38] Rickey R. Dean Letter, *supra* n.37 (Ex. P).

[39] Jacob Bogage & Christopher Ingraham, *Here's why the Postal Service wanted to remove hundreds of mail-sorting machines*, Wash. Post (Aug. 20, 2020), https://wapo.st/35hYUZH.

[40] Senate Testimony, *supra* n.7 (video at 1:08:37).

and coordinators.[41] However, postal workers have observed on the ground that some machines scheduled for removal continued to be removed even after DeJoy's August 18 statement. *See* Second Whitney Decl. ¶ 6.[42]

Further, DeJoy acknowledged to Congress that he does not intend to recommission most of the machines that have already been removed, even if local facilities request that USPS does so because the facilities need additional capacity. In his Congressional testimony, when asked if any local facilities had requested the recommissioning of machines, he responded: "How would I know that?"[43] But in fact, USPS confirmed that it has received multiple requests from local offices to

---

[41] *Postmaster General Louis DeJoy Statement*, *supra* n.17 (Ex. D); Discovery Responses, *supra* n.26, at 5–6 (Interrogatory 1) (Ex. J).

[42] Defendants' interrogatory answer provides the number of machines removed as of August 18, 2020 only. Discovery Responses, *supra* n.36, at 5 (Interrogatory 1) (Ex. J). Defendants marked as "Confidential" the additional information they provided about machines removed from specific locations, and refused to identify any specific removed machines or the dates on which they were removed, claiming this would be "unduly burdensome"—notwithstanding the Court's finding on August 27, 2020, that Plaintiffs' discovery requests were "appropriate" and "narrowly focused." Email from Joseph Borson to Kristin Beneski (Sept. 8, 2020, 5:47 pm) (Ex. R); Hearing Transcript at 29:9–10, *Washington v. Trump*, No. 20-cv-03127-SAB (excerpts) (Ex. S). Plaintiffs respectfully move to compel a complete response to Interrogatory No. 1.

[43] House Testimony, *supra* n.5 (video at 3:22:10).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

reinstall machines—the precise number and location of which remain unknown—that it has not yet responded to, despite the imminence of the general election.[44]

## C. The Widespread Delays and Ensuing Harms Already Caused by Postal Service Policy Changes

### 1. Residents unable to mail and receive medications and other time-critical items

The acknowledged delays resulting from the "Leave Mail Behind" policy, compounded with the effects of continued machine removals —and implemented without opportunity for public feedback—have already harmed Americans nationwide. Combined with the lack of commitment to treat all Election Mail under First Class service standards, these impacts suggest that—unless the Postal Service changes course—it will not be able to ensure that critical mail is timely delivered or that every vote is counted in the upcoming election.

States, businesses, agencies, and individuals rely on efficient mail delivery for time-sensitive items. These include the eighty percent of veterans who receive their prescription medications from the Department of Veterans Affairs (VA) by mail—totaling almost 120 million prescriptions a year[45]—and 7.3 million Medicare Part D beneficiaries with at least one prescription delivered from a mail-order pharmacy.[46] According to the VA, prescriptions they send out usually arrive

---

[44] *See* Discovery Responses, *supra* n.26, at 6–7 (Interrogatory 1) (Ex. J).

[45] VA Office of Inspector General, *Audit of Consolidated Mail Outpatient Pharmacy Program*, at 19 (Nov. 2, 2016), https://bit.ly/2Dxmo1u.

[46] Juliette Cubanski et al., *Mail Delays Could Affect Mail-Order Prescriptions for Millions of Medicare Part D and Large Employer Plan Enrollees*, Kaiser Family Foundation (Aug. 20, 2020), https://bit.ly/3h8oGBP.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

within 3 to 5 days.[47] But veterans and VA staff report that recently, medications are taking weeks to be delivered.[48] Senator Gary Peters of Michigan has received hundreds of accounts from veterans impacted by "weeks-long waits for critical medication."[49] Veterans in the Plaintiff States, who had never before experienced delays, have been left without critical medications for days or weeks in July and August, including a two-week delay where the medication spent four days sitting at a distribution center. Hermes Decl. ¶¶ 6–11; *see also* Dart Decl. ¶¶ 2–10. Other Postal Service customers have also experienced unprecedented weeks-long delays in delivery of vital medications, leaving them without needed medications for dangerous lengths of time. Sturdivant Decl. ¶ 4; Okanlawon Decl. ¶¶ 6–10; Livermore Decl. ¶¶ 2–11; Geissel Decl. ¶¶ 2–14; Olsen Decl. ¶¶ 5–11; White Decl. ¶ 2–5.

Small businesses are also suffering from mail delays affecting their ability to receive inventory and fulfill orders—at a time when they are particularly vulnerable and relying on delivery more than ever due to COVID-19. Small businesses often rely on the Postal Service because of its affordable rates and ability to reach all areas. Stembridge ¶ 4; McIntyre Decl. ¶ 6; Mitchell Decl. ¶ 4.

---

[47] *VA Prescription Refill and Tracking*, Dep't of Veterans Affairs, https://bit.ly/3bIb7Z7.

[48] *See* Abbie Bennett, *Lawmakers call on USPS Postmaster General to prioritize veterans, troops*, ConnectingVets.com (Aug. 25, 2020), https://bit.ly/3jLxhfu (reporting over 200 veterans and caregivers confirmed medication delivery delays); Letter from Sen. Tester et al. to DeJoy (Aug. 13, 2020) (Ex. T).

[49] Letter from Sen. Peters to Hal J. Roesch II (Aug. 13, 2020) (Ex. U).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

They are noticing increasing delays, products going bad in transit because of delivery delays,[50] and lost customers,[51] and worry that they will be crippled by an inability to efficiently fulfill customer orders. Stembridge Decl. ¶¶ 2–12; Davidson Decl. ¶¶ 2–12; McIntyre ¶ 6–8; Mitchell Decl. ¶¶ 2–8; Williams Decl. ¶¶ 2–11.

> **2.** **States unable to timely send and receive legally required communications for the administration of benefits and other programs**

Mail delays also prevent State governments from making time-critical communications with and transmitting benefits to their residents. These include notices required by statute for child welfare proceedings, as well as benefits to which residents are legally entitled and rely on for their basic needs. Federal and state laws impose strict timelines on processing and delivery of benefits and related notices. *See* Tousignant Decl. ¶ 7; Cully Decl. ¶ 7; Lynne Thomas Decl. ¶ 7; Peterson Decl. ¶ 5; Richards Decl. ¶¶ 5–6. Benefits and notices are delivered primarily through the Postal Service and serve hundreds of thousands of families, totaling tens of millions in benefits: from child support to medical coverage to food, housing, and childcare assistance. Tousignant Decl. ¶¶ 5–6, 9–11; Cully Decl. ¶¶ 4, 6, 11; Lynne Thomas Decl. ¶¶ 3–4; Bartolomucci Decl. ¶¶ 4, 12, 15–16; Richards Decl. ¶¶ 4, 7, 9. For most of these programs, communication via mail is either legally required or the only practical option. Tousignant Decl. ¶ 6; Bartolomucci Decl. ¶¶ 5, 10–13; Cully Decl. ¶¶ 5, 9–10; Lynne Thomas Decl. ¶¶ 5, 10; Cafferata Decl. ¶¶ 3–5, 8; Fisher Decl. ¶ 4–7 (in Nevada, only 1% of recipients

---

[50] Luke Broadwater et al., *Postal Crisis Ripples Across Nation as Election Looms*, N.Y. Times (updated Aug. 18, 2020), https://nyti.ms/3597EkN.

[51] Aaron Gordon, *The Post Office's Great Mail Slowdown Is Hurting Small Businesses*, Vice (Aug. 4, 2020); https://bit.ly/2R0Kbde.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  opted out of paper mail notification). And given the pandemic and historically high

2  unemployment, States are serving more first-time recipients, requiring additional

3  communications. Cafferata Decl. ¶ 6; Fisher Decl. ¶ 11; Richards Decl. ¶ 4.

4      Mail delays will have cascading and devastating effects on residents who

5  rely on them for basic needs. As an example, for the Illinois child support program,

6  which mails approximately 2000 to 3000 notices and 165,000 paper checks per

7  month totaling approximately $35 million in payments, "any delay—particularly

8  significant delays—can wreak catastrophic results on" the approximately 640,000

9  "children who depend on these funds to meet their basic needs[.]" Bartolomucci

10  Decl. ¶¶ 4, 6, 12, 15–16.

11      The States are already experiencing these impacts. Illinois mailed out more

12  than 110,000 food benefit redetermination notices in August, but received only

13  approximately 1500 responses—significantly lower than the typical 60% response

14  rate from prior years. Cully Decl. ¶ 6. Applicants for medical benefits in Illinois

15  have not received requests for additional information on pending applications until

16  after the due date has passed, which can result in denials and breaks in medical

17  coverage. Lynne Thomas Decl. ¶¶ 6, 9, 11. Minnesota has experienced weeks-long

18  delays in delivering unemployment and medical leave paperwork to employees,

19  rendering it difficult to comply with statutory deadlines and denying employers the

20  opportunity to dispute claims; as an employer, the state itself is paying for benefits

21  it would have contested had the Postal Service not delivered unemployment letters

22  after the deadline to respond had passed. Peterson Decl. ¶¶ 2–8, 10, 11–13. The

23  Minnesota Public Health Laboratory—which tests drinking water—has

24  experienced weeklong delays in sample delivery, rendering samples invalid for

25  analysis. Huff Decl. ¶¶ 2–11.

26

### 3. Disenfranchisement of voters caused by mail delays

Election officials in the States are concerned that reductions in service will disenfranchise voters—and it is a virtual certainty that the November 2020 election will involve an unprecedented level of mail-in voting. *See* Merrill Decl. ¶¶ 10–11, 13; Winters Decl. ¶ 9; Gough Decl. ¶¶ 11–14; Simon Decl. ¶¶ 7–8; Yarborough Decl. ¶¶ 11–14; Benson Decl. ¶¶ 14–15; Piper Decl. ¶¶ 13–16; Rock Decl. ¶¶ 6–7.[52] This is especially concerning for homebound voters, such as the elderly, persons with disabilities, those who have limited access to transportation and childcare that will enable them to vote in person, overseas and military voters, Native American voters living on reservations, shift workers and others who cannot get to the polls within set hours, and those who are particularly vulnerable to harm from COVID-19. *See* Winters Decl. ¶¶ 7–8; Merrill Decl. ¶ 14; Rock Decl. ¶ 8; Goldway Decl. ¶ 16; Simon Decl. ¶ 12. As the former Chair of the Postal Regulatory Commission notes, during this pandemic "mail-in voting has never been more important to facilitate the right of individuals to safely and securely participate in our democracy." Goldway Decl. ¶ 18.

The Postal Service itself has warned the vast majority of States that—for the first time—it may not be able to meet state deadlines for delivering last-minute mail-in ballots.[53] Multiple Secretaries of State and other election officials in the

---

[52] *See also* Michelle Ye Hee Lee & Jacob Bogage, *Postal Service backlog sparks worries that ballot delivery could be delayed in November*, Wash. Post (July 30, 2020), https://wapo.st/3bys6g9; Brian Naylor, *Pending Postal Service Changes Could Delay Mail and Deliveries, Advocates Warn*, NPR (July 29, 2020), https://n.pr/320TiB8.

[53] USPS Letters to States, *supra* n.29 (Ex. L).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Plaintiff States have submitted declarations attesting to their concern regarding the "broad and serious injury to the voting rights" of their citizens. Simon Decl. ¶ 13 (Minnesota Secretary of State); *see* Benson Decl. ¶¶ 4–15 (Michigan Secretary of State); Griswold Decl. ¶ 25 (Colorado Secretary of State); Merrill Decl. ¶¶ 17–20 (Connecticut Secretary of State); Rock Decl. ¶¶ 24–27 (Rhode Island Director of Elections); Winters Decl. ¶¶ 10–13 (Vermont Deputy Secretary of State); Yarbrough Decl. ¶¶ 21–25 (Cook County, Illinois Clerk); Witzel-Behl Decl. ¶¶ 10–12 (Madison, Wisconsin City Clerk); Harvey Decl. ¶¶ 5–8 (Elections Director for Frederick County, Maryland); Gough Decl. ¶¶ 21–25 (Executive Director of the Chicago Board of Election Commissioners). These harms include late-received voter applications, voters receiving their ballots late, and delays in returned ballots, as well as undercutting public confidence in voting by mail, prompting voters to vote in person instead, heightening health risks. *Id.*

The Michigan Secretary of State testifies that the state and its vendors have spent significant time and money ensuring that absentee voter ballot envelopes meet USPS standards for Election Mail, allocating more than $2 million for the purchase of such envelopes—largely at the urging of the Postal Service. Benson Decl. ¶ 10. The Postal Service did not request that absentee voter ballot envelopes be sent only by First Class mail as part of that process. *Id.* Rather, Michigan's expectation was that the Postal Service would continue to provide expedited service for Election Mail regardless of class, and that increased statewide compliance with Postal Service design standards for Election Mail would facilitate this service—until the warning letter sent in July 2020. *Id.*

The States' concerns about impacts on elections are well founded. For primary elections held in 2020, hundreds of thousands of ballots have already been

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

rejected, including for untimely submission.[54] In many States, completed ballots that are not received by Election Day are invalidated. In others, ballots must be postmarked by Election Day. In Michigan, the Secretary of State reported that "my Department has received reports from several clerks that ballots they put in the mail took *several weeks* to reach voters." Benson Decl. ¶ 15 (emphasis added). Michigan, which requires that ballots be received by Election Day, had to reject over 6400 absentee ballots because they arrived after the state's primary election day.[55] In Madison, Wisconsin, Postal Service officials informed the elections administrator that ballots should arrive at voters' residences in two to five days, but "many voters have contacted the City Clerk's Office to report that they have waited around five to seven days for ballots to arrive at their residence," and return delivery back to the City Clerk's Office "can take up to a week." Witzel-Behl Decl. ¶¶ 6–7. For Madison, in the August 2020 primary election, the number of absentee ballots that arrived late and were not counted almost doubled from the comparable primary election in August 2018. *Id*. ¶ 11.

Voters themselves have also reported problems with vote-by-mail. In primaries conducted this August, voters in the Plaintiff States experienced weeks-long delays in receiving and returning ballots, sometimes preventing their vote from being counted at all, and causing some to plan to vote in person for the

---

[54] Pam Fessler & Elena Moore, *More Than 550,000 Primary Absentee Ballots Rejected In 2020, Far Outpacing 2016*, NPR (Aug. 22, 2020), https://n.pr/2Zfb81B.

[55] Beth LeBlanc, *Benson: 6,400 Michigan absentee ballots rejected for late arrival*, The Detroit News (Aug. 14, 2020), https://bit.ly/3lUKqVy.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

general election despite risk of exposure to COVID-19. Bipes Decl. ¶¶ 2–9; Arndt Decl. ¶¶ 2–9; Rumbley Decl. ¶ 5; Robin Thomas Decl. ¶¶ 2–12.

In short, delays in delivery and postmarking caused by the "Leave Mail Behind" policy and the Postal Service's decision to no longer treat Election Mail as First Class mail have already disenfranchised voters and will disenfranchise many more in November.

## III.   ARGUMENT

### A.   Standard of Review

Preliminary injunctive relief is warranted when the moving party shows that: (1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm in the absence of an injunction; (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party, the balance of equities factor merges with the public interest. *Drake's Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

### B.   The States Are Likely to Succeed on the Merits

#### 1.   The States have standing

The States have standing to challenge Defendants' policy changes on multiple independent grounds.

First, as detailed below, federal law guarantees States and other interested persons the right to comment on proposed changes to the nature of postal services, 39 U.S.C. § 3661, a right the States were denied here. Thus, the States have alleged the "deni[al of] a very fundamental right—the opportunity for a hearing on [a] proposed change" to the nature of postal services. *See Buchanan v. U.S. Postal Serv.*, 375 F. Supp. 1014, 1019 (N.D. Ala. 1974), *issuance of preliminary injunction aff'd in part, vacated in part on other grounds by Buchanan v.*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1   *U.S. Postal Serv.*, 508 F.2d 259, 266–67 (5th Cir. 1975). "The denial of this
2   statutory right [under Section 3661] is alone a sufficient injury in fact to support
3   the requisite standing to sue." *Id.*

4       Additionally, the States have standing because Defendants' changes harm
5   the States' sovereign, proprietary, and *parens patriae* interests. The Constitution
6   reserves to States the sovereign power to conduct elections as they see fit.
7   U.S. Const., art. I, § 4; art. II, § 1; and amend. XVII; *see Heath v. Alabama*,
8   474 U.S. 82, 93 (1985); *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1416
9   (9th Cir. 1995) (states have "sovereign rights" to "fix the time, place, and manner"
10  of elections). States administer access to ballots, identify and administer polling
11  locations, set the times for voting, print ballots and voters' pamphlets, and count
12  and certify ballots. *See, e.g.*, Rock Decl. ¶¶ 2–18; Benson Decl. ¶ 2–10;
13  Merrill Decl. ¶¶ 2–12. States also hold statewide and local elections on Election
14  Day. *See, e.g.*, Wash. Rev. Code § 29A.04.321; Md. Code Elec. Law § 8-301. The
15  Postal Service's unlawful actions impinge on the States' sovereign powers to
16  conduct elections by mail, in whole or in part, especially during a pandemic.

17      As extensive users of the mail for critical functions, the States also have
18  proprietary interests in the mail system. *See Alfred L. Snapp & Son, Inc. v. Puerto*
19  *Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982) (like any similarly situated
20  proprietor, states have standing to pursue their proprietary interests); *City of*
21  *Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (government entity's
22  proprietary interests "are not confined to protection of its real and personal
23  property" and "are as varied as [its] responsibilities, powers, and assets"). States
24  send an enormous amount of mail, from ballots to benefit payments to legal
25  notices. *See, e.g.*, Fisher Decl. ¶¶ 4–6; Bartolomucci Decl. ¶¶ 5–7, 11–13;
26  Cully Decl. ¶¶ 5–6; Richards Decl. ¶ 8; Tousignant Decl. ¶ 6. Changes to postal

services will harm the States' ability to send materials in a timely fashion, just as they would affect any business or entity relying on the mail for core functions.

The States also have interests in protecting their citizens' fundamental right to vote and in protecting the health and welfare of residents who depend on the availability of timely postal services for the delivery of critical items such as medications, utility bills, checks, business deliveries, legal documents, and a wide range of other time-sensitive materials.

Defendants' actions have caused or will cause injury in fact that is redressable by this Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants have suggested that the anticipated harm to the States' ability to conduct their elections this November is "conjectural or hypothetical," *id.*—but the States have established a "substantial risk that the harm will occur," *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149, 158 (2014). And there is ample evidence that other harms from delayed mail delivery already are occurring.

**2.      The States are likely to succeed on their Section 3661 claims**

**a.      Under Section 3661, Defendants were required to seek an advisory opinion from the PRC prior to implementing their "Transformative Initiative"**

Section 3661 provides that before USPS may undertake any "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," it "*shall submit a proposal* . . . to the Postal Regulatory Commission requesting an advisory opinion on the change." This would have entitled users of the mail, including the States, to notice and an opportunity to comment on the proposed policy changes before they went into effect. 39 U.S.C. § 3661(c). Defendants admit they did not seek an advisory

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

opinion prior to instituting their "transformative initiative."[56] According to Defendants, they declined to follow Section 3661 because "[n]one of the operational efforts discussed here constitute such a change."[57] This conclusion is contrary to the case law, the evidence, and Defendants' own admissions.

The requirement to seek an advisory opinion applies when USPS proposes a "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis." 39 U.S.C. § 3661(b). The canonical interpretation of this language comes from the Fifth Circuit's opinion in *Buchanan v. U.S. Postal Service*:

> **First**, there must be a 'change.' This implies that a quantitative determination is necessary. There must be some meaningful impact on service. Minor alterations which have a minimal effect on the general class of postal users do not fall within 3661.
>
> **Second**, the change must be 'in the nature of postal services.' This involves a qualitative examination of the manner in which postal services available to the user will be altered.
>
> **Third**, the change must affect service 'on a nationwide or substantially nationwide basis.' A broad geographical area must be involved.

508 F.2d 259, 262–63 (5th Cir. 1975) (emphasis added). "These three factors combine to demonstrate that Congress intended the safeguards of 3661 to apply only when changes of significance were contemplated." *Id.* at 263.

Each of these factors is met here. *First*, there is no dispute that Defendants are implementing significant "changes" to USPS operations. Indeed, Defendants described the "Leave Mail Behind" policy as representing "impactful changes in

---

[56] Letter from Thomas J. Marshall to Rep. Maloney et. al (July 22, 2020) (Ex. V); Letter from Thomas J. Marshall to Sen. Peters (July 22, 2020) (Ex. W).

[57] *Id.*

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

our operations," "transportation changes," "move[ment] away from past practices," and part of an "operational pivot."[58] Similarly, Defendant DeJoy described these "recent changes" as a part of a "transformative initiative."[59] The same is true with regard to no longer treating all Election Mail as First Class mail, which will significantly slow delivery without the Commission's approval, affecting potentially tens of millions of ballots. In 2018, more than 31 million ballots were cast by mail;[60] the November election will dwarf that number.

*Second*, Defendants' changes are "in the nature of postal services" because, by delaying mail delivery, they are affecting "the manner in which postal services [are] available to the user." *Buchanan*, 508 F.2d at 263. Defendants admit their transportation changes are affecting mail service. In announcing the changes, Defendants warned "we may see mail left behind or mail on the workroom floor or docks (in P&DCs), which is not typical."[61] Defendants thus made their changes *knowing* they would lead to delay. And indeed, delays have been significant and widespread. USPS's own report shows that, starting the week of July 11—the week the changes were implemented—on-time ratings for mail suddenly, sharply declined by around 10 percent for both First-Class Mail and Marketing Mail.[62] While on-time rates have improved somewhat since USPS partially halted its

_____

[58] *Mandatory Stand-Up Talk*, *supra* n.5 (Ex. A).

[59] *Path forward*, *supra* n.20 (Ex. E).

[60] *Processing Readiness of Election and Political Mail During the 2020 General Elections*, USPS Office of the Inspector General, Aug. 31, 2020, https://bit.ly/2F0r6pv. (Ex. X).

[61] *Mandatory Stand-Up Talk*, *supra* n.5 (Ex. A).

[62] *Service Performance Measurement*, *supra* n.21 (Ex. F).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

"transformative" changes, the on-time rate for First Class Mail continues to be around 5 percent lower than it was prior to implementation of the "Leave Mail Behind" policy.[63] To put this in perspective, USPS typically delivers 181.9 million First Class mail pieces each day.[64] Thus, a five percent reduction in service means an additional *nine million* pieces of mail delayed per day. These delays have had significant consequences for users of the mail across the country. As detailed above, significant delays and inconsistent service have been reported across the country, with new reports trickling in seemingly every day. Indeed, DeJoy admitted that Defendants' "transformative initiative has had unintended consequences that impacted our overall service levels."[65] As for the change to Election Mail, the Postal Service freely admits that failing to treat all Election Mail as First Class mail will lead to delays of up to *eight days* per ballot,[66] which the Postal Service also acknowledges may prevent voters from having their ballots counted.[67]

Previously, when the USPS has sought to implement policies resulting in longer delivery times, even delays of just one day, it has recognized the need for an advisory opinion from the PRC. *See* Mail Processing Network Rationalization

---

[63] *Congressional Briefing*, *supra* n.23 (Ex. G).

[64] *Postal Facts: One Day*, USPS.com, https://facts.usps.com/one-day/.

[65] *Path forward*, *supra* n.20 (Ex. E).

[66] As explained above, the delays are actually likely to be longer even than Defendants admit. *See supra* at p.12.

[67] USPS Letters to States, *supra* n.29 (Ex. L).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Service Changes 2012 USPS Opinion Request, No. N2012-1[68] (USPS request for advisory opinion for proposal "to implement changes in the nature of service," namely, "eliminat[ing] the expectation of overnight service for significant portions of First-Class Mail and Periodicals," "modif[ying] . . . the two-day delivery range," and "expand[ing] . . . the three-day delivery range"); DSCF Standard Mail Load Leveling USPS Opinion Request, No. N2014-1[69] (USPS request for advisory opinion for proposal to delay delivery of certain types of mail by one day). The requirement is no different here: even if Defendants are correct that delays are an "unintended"—though foreseen—consequence of their changes, these changes have nonetheless significantly affected mail service.

The mere fact that Defendants might style their "transformative" changes as "management efforts"[70] or part of a "strategic plan"[71] does not insulate them from review by the PRC or this Court. While "[c]ourts can defer to the exercise of administrative discretion on internal management matters, . . . they cannot abdicate their responsibility to insure compliance with congressional directives setting the limits on that discretion." *Nat'l Ass'n of Postal Sup'rs v. U. S. Postal Serv.*, 602 F.2d 420, 432 (D.C. Cir. 1979). Section 3661 clearly establishes limits on the USPS's discretion. Whatever other changes it may have authority to make, when, as here, the USPS decides to make a nationwide "change in the nature of postal

---

[68] Mail Processing Network Rationalization Service Changes 2012 USPS Opinion Request, Dkt. No. N2012-1, available at https://bit.ly/35fBlRq (Ex. Y).

[69] DSCF Standard Mail Load Leveling USPS Opinion Request, Dkt. No. N2014-1, available at https://bit.ly/2ZgUiiV (Ex. Z)

[70] Letter from Marshall to Sen. Peters, *supra* n.56, (Ex. W).

[71] *Path forward*, *supra* n.20 (Ex. E).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

services," it must first "submit a proposal . . . to the Postal Regulatory Commission requesting an advisory opinion on the change."

*Third*, these operational changes and the delays in Election Mail have nationwide scope. As the Postmaster General admits, the transportation change will impact "any state where trucks run": in other words, every state. Similarly, because the November election is conducted nationwide, Defendants' change in the treatment of Election Mail will affect voters and election administration in every U.S. state and territory.

Defendants therefore had a duty to submit a request to the PRC for an advisory opinion prior to implementing the "transformative" changes.

### b. The Court has jurisdiction to require the Postal Service to comply with Section 3661

#### (1) The Court has jurisdiction over Defendants' *ultra vires* actions

Although the Postal Service is generally exempt from the Administrative Procedure Act, it is well established that it is subject to non-APA judicial review "to determine whether the agency has acted 'ultra vires'—that is, whether it has 'exceeded its statutory authority.'" *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)). Courts have thus routinely held that judicial review of *ultra vires* USPS actions is appropriate where, as here, it involves straightforward questions of statutory interpretation. *See Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d 260, 265 (D.C. Cir. 2016).

*Combined Communications Corp. v. U.S. Postal Service* is instructive. There, the Sixth Circuit considered a claim similar to the States' *ultra vires* claim here. 891 F.2d 1221 (6th Cir. 1989). At issue was a prior statutory scheme

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

providing that "the Postal Service may from time to time request that the [Postal Rate] Commission submit, or the Commission may submit to the Governors on its own initiative, a recommended decision on changes in the mail classification schedule." 39 U.S.C. § 3623 (repealed 2006).[72] Nevertheless, the USPS, without input from the Commission, implemented a new regulation purporting to interpret its existing classification schedule, which plaintiffs contended effectively modified the schedule. *Combined Commc'ns*, 891 F.2d at 1224. The court agreed with plaintiffs, explaining that "[t]he Postal Service may not bring about a change in either rates or classifications of mail without first submitting the proposed change to the Commission who in turn must issue a recommended decision to the Board of Governors." *Id.* at 1228. Because the regulation "effectively work[ed] a change in the scope of a mail classification," the Court held it "was *ultra vires* because it exceeded the powers granted to the Postal Service," and therefore enjoined the regulation. *Id.* at 1229.

Like *Combined Communications*, this case presents a straightforward question of statutory interpretation for which *ultra vires* review is appropriate: were Defendants required to seek an advisory opinion from the PRC prior to implementing their "transformative" changes? For the reasons outlined above, the answer is yes. Defendants' "transformative" changes to the USPS have caused and will continue to cause a nationwide change in postal services. Mail that is supposed to be delivered within set time frames is taking much longer to reach its destination. Defendants acknowledged this would happen when they implemented their changes, but rather than seeking the required opinion "prior to" implementation,

---

[72] The Postal Rate Commission was the predecessor to the current Postal Regulatory Commission.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

they moved forward without any input from (or even notice to) the PRC and the public. And now, as Defendants predicted, their changes have led to significant mail delays and "effectively work[ed] a change in" the USPS's service standards. *Combined Commc'ns*, 891 F.2d at 1229. Having failed to request an advisory opinion from the PRC, Defendants did not, and do not, have the authority to modify mail services unilaterally. *Id.*

In their Opposition to the States' Motion for Expedited Discovery (ECF No. 29) Defendants suggested that even if they did violate the law, 39 U.S.C. § 3662 divests this Court of authority to review their actions. That argument fails on multiple levels.

First, by its terms, Section 3662 is discretionary, not mandatory. 39 U.S.C. § 3662(a) ("Any interested person . . . *may* lodge a complaint with the Postal Regulatory Commission[.]") (emphasis added); *S. Cal. Edison v. U.S. Postal Serv.*, 134 F. Supp. 3d 311, 318 (D.D.C. 2015) ("The plain language of section 3662(a), *contra* Defendant's portrayal, does not necessarily grant *exclusive* jurisdiction to the PRC.") (emphasis in original). Nothing in its permissive language divests district courts of the broad jurisdiction granted to them under 28 U.S.C. § 1339 over "any civil action arising under any Act of Congress relating to the postal service," nor the grant of "jurisdiction over all actions brought by or against the Postal Service" in 39 U.S.C. § 409(a). Thus, Section 3662 is best read as providing an alternative process for postal service changes that do not rise to the level of requiring an advisory opinion under Section 3661 or for those wishing to avoid the burdens of litigating in federal court.

Second, the history of Sections 3661 and 3662 and judicial interpretations of those statutes confirm that Section 3662 does not divest courts of jurisdiction over claims like this one under Section 3661. In *Buchanan*, the leading case on

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Section 3661, the Fifth Circuit explained that Sections 3661 and 3662 are "complement[ary]" and "together they form a harmonious scheme":

> For those 'changes' which do not fall within 3661, the postal user may turn to 3662 if the change does in fact affect his postal service. Although 3662 is a more limited remedy, it insures that an unexpansive interpretation of 3661 will not leave remediless the postal user dissatisfied by changes that do not rise to the level of those covered by 3661.

*Buchanan*, 508 F.2d at 264 (footnotes omitted). Congress is presumed to have been aware of this interpretation when it later amended these sections, *see, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 580 (1978), but nothing in the legislative history of subsequent amendments suggests an intention to legislatively overrule *Buchanan. See, e.g.*, S. Rep. No. 108-318 (2004); H.R. Rep. No. 108-672 (2004).

Indeed, shortly after the current version of Section 3662 was enacted, the D.C. District Court explicitly *rejected* the argument that it lacked jurisdiction over a complaint regarding the USPS's alleged non-compliance with Section 3661(b). *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, No. CIV.A.06 726 CKK, 2007 WL 2007578, at *7 (D.D.C. July 6, 2007). As the court explained, "Plaintiff's Complaint seeks a declaration that it is unlawful for USPS to proceed with modification to its mail processing operations . . . because USPS failed to submit [the proposed modifications] to the PRC for an advisory opinion within a reasonable time prior to the implementation of [the modifications] . . . . Plaintiff's Complaint appears to be properly brought before this Court pursuant to 39 U.S.C. § 409, which provides that 'the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against [USPS].'" *Id.* (quoting 39 U.S.C. § 409(a)).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Although some courts have found that Section 3662 operates as an exclusive venue provision for certain types of rate and service complaints, none of those cases concerned claims under Section 3661(b). *See, e.g.*, *Ehrlich v. United States*, No. 17-01245-RAJ, 2018 WL 3608404, at *2 (W.D. Wash. July 26, 2018); *Erickson v. U.S. Post Office*, 250 F. A'ppx 757, 758 (8th Cir. 2007). These cases turn on the notion, inapposite here, that by providing one venue (the PRC) for the types of claims at issue, Congress must have intended to exclude district courts from exercising the jurisdiction they would otherwise have. *See, e.g.*, *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799–800 (8th Cir. 2006). As the *LeMay* court noted, this is a question of Congressional intent, with evidence discerned "from the statutory scheme as a whole." *Id.* But nothing in the statutory scheme evinces an intent to force Section 3661 complaints within the strictures of Section 3662. Instead, by Congressional design, "Section 3662 complements 3661, and together they form a harmonious scheme." *Buchanan*, 508 F.2d at 264.

This Court therefore has jurisdiction over the States' *ultra vires* claims, and should conclude that the States are likely to succeed on the merits of those claims. If the Court concludes, however, that 39 U.S.C. § 3662 restricts the Court's authority to review the States' *ultra vires* claim, then mandamus becomes appropriate, as detailed below.

### (2) Even if *ultra vires* review were unavailable, mandamus would be appropriate

Under 28 U.S.C. § 1361, this Court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the [plaintiff]'s claim is clear and certain; (2) the official's duty is

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997). Here, Defendants are violating a clear statutory duty to confer with the Postal Regulatory Commission before delaying mail service nationwide, and if the Court concludes that *ultra vires* review is unavailable, then the States have no other adequate remedy, rendering mandamus appropriate.

Mandamus is appropriate to compel government officials to act when they "ignore[] or violate[]" the express mandates of a statute. *Barron v. Reich*, 13 F.3d 1370, 1376 (9th Cir. 1994). "[T]he act to be compelled must be mandatory or ministerial and not discretionary." *Kennecott Copper Corp., Nev. Mines Div., McGill, Nev. v. Costle*, 572 F.2d 1349, 1356 (9th Cir. 1978). That is, it must be "a positive command . . . so plainly prescribed as to be free from doubt." *United States v. Walker*, 409 F.2d 477, 481 (9th Cir. 1969).

As discussed above, Section 3661 establishes a straightforward, mandatory duty: before implementing significant changes in postal service the USPS "*shall submit a proposal* . . . to the Postal Regulatory Commission requesting an advisory opinion on the change." Nothing about Defendants' duty is discretionary; it is a mandatory, ministerial duty that they were required to undertake. *See Walker*, 409 F.2d at 481.

The States' claim for mandamus relief here "is clear and certain," *Patel*, 134 F.3d at 931, because the States have an unambiguous statutory right to compel USPS's compliance with Section 3661. Section 3661 explicitly provides for the public's right to participate in the advisory opinion process. 39 U.S.C. § 3661(c) ("The Commission shall not issue its opinion on any proposal until an opportunity for hearing on the record under sections 556 and 557 of title 5 has been accorded to . . . users of the mail[.]"). In *Buchanan*, the district court decisively held that

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

failure by the USPS to engage in the advisory opinion process "denied" the public "a very fundamental right— the opportunity for a hearing on the proposed change." 375 F. Supp. at 1019, *aff'd in part, vacated in part on other grounds*, 508 F.2d 259 (5th Cir. 1975). The court continued: "The denial of this statutory right is alone a sufficient injury in fact to support the requisite standing to sue . . . . The interest sought to be protected by plaintiffs, i.e., a public hearing before the Postal Rate Commission, is completely within the scope or zone of interest that Section 3661 seeks to protect." *Id.*; *see also* 39 U.S.C. § 3662(a) ("*Any interested person . . . who believes the Postal Service is not operating in conformance with the requirements of . . . this chapter . . . may lodge a complaint with the Postal Regulatory Commission[.]*"). Because the States have standing to bring a claim under Section 3661 and are within the zone of interests of the statute, they have a clear right to mandamus relief to enforce Defendants' compliance with Section 3661.

Finally, if the Court concludes that it cannot review Defendants' actions as *ultra vires*, then mandamus is appropriate because the States have no other adequate remedy and will be irreparably harmed absent mandamus relief. Most imminently, Defendants' "Leave Mail Behind" policy and the slowdown of Election Mail create an intolerable risk that mail-in ballots will not arrive in time to be counted and undermine voter confidence in the election. Additionally, as detailed above and further below, the States and their residents are already being irreparably harmed by Defendants' changes to postal services.

As Defendants will surely note, a party aggrieved by the USPS's failure to comply with Section 3661 may seek relief by filing a complaint with the PRC. *See* 39 U.S.C. § 3662(a). But the option of administrative review does not bar

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

mandamus relief where such review would cause irreparable harm or be futile. *See, e.g.*, *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992) ("This Court's precedents have recognized" that "the interests of the individual weigh heavily against requiring administrative exhaustion" where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim."); *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 515 (4th Cir. 1999) ("Although it is well established that a plaintiff must exhaust administrative remedies before seeking judicial review and that the existence of such administrative procedures will preclude the issuance of a writ of mandamus, we conclude that in this case the administrative process normally available is not accessible to the defendants[.]"). "This is especially true where time is crucial to the protection of substantive rights and administrative remedies would involve delay." *Martinez v. Richardson*, 472 F.2d 1121, 1125 n.10 (10th Cir. 1973).

Defendants are threatening the integrity of November's election, which is only weeks away, and for which ballots are already being mailed. But by statute, the PRC would not be required to even begin proceedings on a complaint for 90 days. 39 U.S.C. § 3662(b). And even if the PRC were to move faster than statutorily required and begin proceedings on a complaint immediately, there is no way the detailed procedures of a PRC hearing could be completed before Election Day. *See* 39 C.F.R. § 3010.304(b) (identifying 17 separate deadlines the PRC "shall consider scheduling" between the beginning of proceedings and a decision on the merits). In short, because any PRC action would occur too late to avoid irreparable harm to the November election, requiring the States to bring their claim first in the PRC would leave them effectively without a remedy. Moreover, election-related harms are only a subset of the harms caused by Defendants' imposition of mail delays. States and their residents rely on the mail for critical,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

38

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

time-sensitive resources, including medication and other benefits. They cannot afford the months of delay that would be caused if the States were required to bring their claim to the PRC in the first instance—particularly not during the COVID-19 pandemic, which has only deepened Americans' dependence on the mail as a critical lifeline.

Aside from these immediate, irreparable harms, rigidly requiring administrative exhaustion also makes no sense because the States "seek judicial relief here not to circumvent the administrative process, but to compel its resumption." *Rahman*, 198 F.3d at 515. The States' request for mandamus does not seek to cut the PRC out of USPS decision-making, but rather to restore its rightful, statutorily mandated role. "[T]he exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy*, 503 U.S. at 145. Congress established the PRC precisely to weigh in on, and facilitate the public weighing in on, the types of changes Defendants are implementing. Permitting Defendants to rely on a rote application of the doctrine to *prevent* the agency from weighing in would turn this purpose on its head.

**3.    The States are likely to succeed on their claims that the changes at issue unconstitutionally infringe on States' authority to regulate elections and the people's right to vote**

Furthermore, the changes at issue infringe on States' constitutional powers to administer the time, place, and manner of state and federal elections and to appoint presidential electors. Pursuant to these grants of constitutional authority, the States have arranged, and in many instances expanded, mail-in voting in the recent primary elections and upcoming election. The American people, in turn,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

39

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

have voted by mail in unprecedented numbers as a safe and preferred method for exercising their fundamental right to vote during the COVID-19 pandemic. Despite overwhelming evidence of the safety and security of mail-in voting, President Trump has waged a months-long crusade to undermine mail-in voting. The changes at issue escalate this crusade by creating a substantial likelihood that the States will not be able to deliver, receive, and tally ballots cast in time to be counted. The USPS itself has warned some Plaintiff States of a "high risk" that ballots will not be delivered in time to be counted, and warned others of likely delays in delivering and returning ballots. By obstructing States' chosen method of conducting elections, the changes infringe on the Plaintiff States' constitutional authority to oversee elections and to appoint presidential electors, and on their residents' constitutional right to vote. The changes should be enjoined for this additional, independent reason.

### a. Strict scrutiny applies

Strict scrutiny applies to the changes at issue for two reasons. First, they directly interfere with authority granted to States by the Constitution to regulate state and federal elections. Second, they will have the effect of denying to many of the States' citizens their fundamental right to vote.

### (1) The changes significantly interfere with the constitutional authority of States

States have broad constitutional authority to determine how voting is conducted in state and federal elections. States also have plenary constitutional authority to appoint presidential electors. The USPS's operational changes significantly interfere with this constitutional authority.

Article I, section 4, clause 1 of the United States Constitution—known as the "Elections Clause"—empowers States to determine the "Times, Places and

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

40

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Manner of holding Elections for Senators and Representatives," subject to the supervisory power of Congress to "make or alter such Regulations[.]" This power is "comprehensive" and

> embrace[s] authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.

*Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see also Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986) (Elections Clause "grants to the States a broad power to prescribe" the procedural mechanisms for holding congressional elections). This broad grant of power includes authority to arrange mail-in voting either by statute or through policies adopted by state officials with authority to administer elections. *See, e.g.*, *Paher v. Cegavske*, --- F. Supp. 3d ----, No. 320CV00243MMDWGC, 2020 WL 2089813, at *9 (D. Nev. Apr. 30, 2020) (emergency regulations expanding mail-in voting authorized by Secretary of State complied with Elections Clause); *see also* U.S. Const., amend. X; *Gregory v. Ashcroft*, 501 U.S. 452, 461–62 (1991) ("[T]he Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections[.]") (citation and internal quotation marks omitted).

In November 2020, all States will be holding elections for congressional Representatives. The Plaintiff States of Colorado, Illinois, Michigan, Minnesota, New Mexico, Oregon, Rhode Island, and Virginia will also be administering elections for Senators. States are also administering elections for state and local

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

41

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

offices, and many voters will also be presented with ballot measures. *See, e.g.*, Griswold Decl. ¶¶ 21–22.

States have an important sovereign interest in protecting against "confusion . . . and even frustration of the democratic process," and in ensuring that their voters who attempt to cast ballots in accordance with state law have their votes counted. *Am. Party of Tex. v. White*, 415 U.S. 767, 782 n.14, 786 (1974); *see also Lubin v. Panish*, 415 U.S. 709, 718 (1974). In this respect, the Elections Clause aligns with the "fundamental premise that all political power flows from the people." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 824 (2015).

With the exception of certain federal statutes not directly implicated here,[73] Congress has largely left the administration of state and federal elections to the States. Courts have likened the relationship between laws passed by state legislatures and those enacted by Congress under the Elections Clause to "prior and subsequent enactments of the same legislature." *Gonzalez v. Arizona*, 677 F.3d 383, 393 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013). "The State laws which Congress sees no occasion to alter, but which it allows to stand, are in effect adopted by Congress." *Id.* (quoting *Ex parte Siebold*, 100 U.S. 371, 388 (1879)).

---

[73] *See, e.g.*, Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20302 (establishing registration and voting deadlines and standards for military personnel and overseas residents); National Voting Registration Act, 52 U.S.C. §§ 20501–20511 (expanding voter registration opportunities and setting standards for maintaining voter registration rolls for federal elections).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

42

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Each of the States have used their constitutional authority to authorize mail-in voting in various forms. *See* Colo. Rev. Stat. § 1-7.5-104; Conn. Gen. Stat. § 9-135; 10 Ill. Comp. Stat. 5/19-1 *et seq.*; Md. Code, Elec. Law § 9-304; Mich. Comp. Laws § 168.759; Minn. Stat. §§ 203B.02, 204B.45; Nev. Rev. Stat. § 293.309; N.M. Stat. § 1-6-4; Or. Rev. Stat. § 254.465; R.I. Gen. Laws § 17-20-1; Vt. Stat. tit. 17, § 2543; Va. Code § 24.2-707; Wash. Rev. Code § 29A.40.091; Wis. Stat. §§ 6.20, 6.85(1).

The Constitution also vests States with plenary authority to appoint presidential electors. Article II, Section 1 provides, in relevant part, that States shall "appoint" electors "in such manner as the Legislature thereof may direct[.]" The Supreme Court recently affirmed that States' authority over the appointment of presidential electors is plenary and includes the right to bind electors to the results of popular elections in States. *Chiafalo v. Washington*, 140 S. Ct. 2316, 2328 (2020). Each of the Plaintiff States, like all other States, have vested this constitutional appointment power in the people of their respective States by tying the appointment of presidential electors to the results of their State's popular elections.[74] By creating tangible obstacles to the delivery and return of ballots, the operational changes compromise the integrity of these popular elections and

_____

[74] Colo. Rev. Stat. § 1-4-301; Conn. Gen. Stat. § 9-175; 10 Ill. Comp. Stat. 5/21-1; Md. Code, Elec. Law § 8-504; Mich. Comp. Laws § 168.43; Minn. Stat. § 208.02; Nev. Rev. Stat. § 298.065; N.M. Stat. § 1-15-4; Or. Rev. Stat. § 248.360; R.I. Gen. Laws § 17-40-10; Vt. Stat. tit. 17, § 2731; Va. Code § 24.2-202; Wash. Rev. Code § 29A.56.320; Wis. Stat. § 8.25; *see also* Nat'l Archives, Electoral College: About the Electors, https://www.archives.gov/electoral-college/electors (last visited Sept. 8, 2020).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION NO. 1:20-CV-03127-SAB

43

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

thereby unconstitutionally interfere with States' power to appoint presidential electors by popular election.

Voting by mail has become an integral part of statewide presidential elections. Even before the pandemic, certain Plaintiff States, like Washington, Oregon, and Colorado, had established vote-by-mail as the primary method for voting in state and federal elections.[75] In other States, Americans have come to rely on vote-by-mail in light of the health risks posed by the pandemic. And in response to COVID-19, some Plaintiff States, like Nevada and Vermont, will send mail-in ballots to all registered voters for the 2020 general election. States have built their vote-by-mail systems around the Postal Service's longstanding performance standards and treatment of Election Mail in accordance with First-Class mail delivery standards. *See* Rock Decl. ¶ 22; Griswold Decl. ¶¶ 13–16.

Delays in postmarking and delivering ballots will inevitably lead to voters' ballots being rejected. This interferes with the rights of the Plaintiff States to administer elections and to appoint presidential electors through the electoral processes that they have adopted. Worse, the changes at issue have imposed these delays without sufficient time for States to adjust legal requirements and messaging to the public about deadlines for returning ballots.

The interference with the manner of state elections is amplified by the COVID-19 pandemic. Given the health risks posed by the COVID-19 pandemic, many voters do not have other options for exercising their most fundamental right to vote other than to vote by mail. As a result of the pandemic, record numbers of voters will likely vote by mail. *See supra* at pp. 3–4, 21–22.

---

[75] *See* Colo. Rev. Stat. § 1-7.5-104; Or. Rev. Stat. § 254.465; Wash. Rev. Code § 29A.40.091.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

44

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

The operational changes thus interfere with the constitutional authority of States to control the manner of elections—including vote-by-mail procedures—by disrupting timely mail delivery on the eve of a general election.

### (2) The operational changes create substantial burdens on the right to vote

The operational delays also significantly interfere with the rights of the States' citizens to vote. The right to vote is "fundamental," *Tashijian*, 479 U.S. at 217, and "preservative of all rights," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). *See also Hadley v. Junior Coll. Dist. of Metro, Kansas City, Mo.*, 397 U.S. 50, 56 (1970) (holding that equal protection "requires that each qualified voter must be given an equal opportunity to participate in that election . . . ."). Defendants' actions will interfere with the right to vote because they will result in delays in postmarking and delivery of mail and in numerous ballots thus not being counted.

The USPS's recent policy changes will slow delivery of Election Mail, including ballots. States adopted elections systems with vote-by-mail components—including establishing deadlines for mailing ballots and creating guidance for voters—based on USPS's longstanding practice of treating Election Mail "on the level of First Class mail." *See, e.g.*, *supra* at pp. 11–14; Benson Decl. ¶ 10; Griswold Decl. ¶ 13. Ending that practice will cause USPS to take much longer to deliver Election Mail, including ballots. *See* Goldway Decl. ¶¶ 10–12. The Postal Service's "Leave Mail Behind" policy will also delay Election Mail, as mail that would otherwise have been loaded on trucks for processing or delivery is left behind and delayed for one or more days. Yao Decl. ¶ 7; Puhalski Decl. ¶¶ 9–10; Anthonasin Decl. ¶¶ 14–21; Hartwig Decl. ¶¶ 5–7.

These changes will affect States and voters whether the State measures the timeliness of a ballot by when it is received or when it is postmarked. To begin

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

45

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

with, Defendants have acknowledged that the changes will affect voters in nearly every State who seek to register to vote, to change their registration, or to request an absentee ballot close to the election.[76] In States that require that ballots be postmarked by Election Day, the "Leave Mail Behind" policy will mean that even if a ballot is timely placed in a collection box or outside a person's home for delivery, it may not arrive to a processing facility in time to be postmarked. *See, e.g.*, Yao Decl. ¶ 7. And this policy will have even more pernicious effects in States that require that ballots be received by elections officials by a specific time on Election Day. *See* Colo. Rev. Stat. § 1-7.5-107(4)(b)(II); Conn. Gen. Stat. § 9-174(a); Mich. Comp. Laws § 168.764a; Minn. Stat. §§ 203B.08(1), (3), 204B.45-.46; N.M. Stat. § 1-6-10(C), (D); Or. Rev. Stat. § 254.470(6)(e); R.I. Gen. Laws § 17-20-2.1; Va. Code § 24.2-705; Wis. Stat. § 6.87(6). In these States, even if mail is timely transported *to* a processing facility, (1) even a minor delay in processing at the facility could preclude the mail from being loaded onto a truck for timely delivery to election officials, and (2) even a minor delay in transport from the processing facility to the station could result in mail carriers being required to leave for delivery before the processed ballots arrive. In either situation, ballots that were deposited in the mail with sufficient time for delivery under USPS standards will be late and rejected.

Delays in delivery by the USPS are already widespread, as detailed above. *See supra* at pp. 8–10, 17–24. In primary elections held around the country so far this year, hundreds of thousands of ballots have already been rejected, including for untimely submission.[77] In Michigan, which requires ballots to be received by

---

[76] USPS Letters to States, *supra* n.29 (Ex. L).

[77] Fessler & Moore, *supra* n.54.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

46

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Election Day but where many sorting machines have been removed—which likely compounded the delays caused by the policies at issue in this motion—over 6400 primary ballots were rejected as untimely.[78] Combs Decl. ¶ 5; Puhalski Decl. ¶ 4.

In sum, the circumstances establish that the burden imposed by the USPS's operational changes—made on the eve of a general election during a global pandemic—is severe. They interfere with the rights of the States' citizens and the States' own constitutional authority. There is a very real danger that otherwise-valid ballots will go uncounted as a result of a late postmark or late delivery directly attributable to USPS's unlawful policy changes.

### (3)  The severe burdens on State and individual rights warrant strict scrutiny

The combined interference with the constitutional authority of States and with the fundamental right to vote requires application of strict scrutiny. The operational changes impose a severe burden on States' administration of elections and chosen mode of appointing presidential electors, and courts regularly apply heighted scrutiny to restrictions that threaten significant disenfranchisement of voters. *See, e.g.*, *Obama for America v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012) (enjoining an Ohio statute that shortened the early-voting period for the general population but not for military personnel); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 588 (6th Cir. 2006) (striking down ballot restriction that unfairly and unnecessarily impeded access to ballot); *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 311 (S.D.N.Y. 2020) (finding New York's refusal to provide list of "inactive voters" unconstitutional where thousands of individuals are "improperly disenfranchised—and thus suffer perhaps the greatest burden a

---

[78] LeBlanc, *supra* n.55.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

state can impose on a voter" and others face "substantial delay" in voting); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016) (extending registration deadline in aftermath of hurricane where close of registration would disenfranchise significant number of voters who would be "stripped of one of our most precious freedoms"). As one court aptly explained: "This isn't golf: there are no mulligans." *Scott*, 215 F. Supp. 3d at 1258. The right to have one's vote counted in an election, if lost, cannot be remedied.

Given this context, the burdens imposed by Defendants' policy changes are no mere inconvenience. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 205 (2008). They instead pose an immediate and dire risk of disrupting the States' administration of elections, and by threatening the disenfranchisement of thousands of citizens these policy changes are likely to cause grave harm to public confidence in the election. These combined circumstances warrant application of strict scrutiny.

### (4) The discriminatory nature of the operation changes also requires strict scrutiny

Strict scrutiny is especially appropriate here because a growing body of evidence suggests that the operational changes were motivated, at least in part, by a desire to secure a political advantage for the President and his party. *See, e.g.*, *Anderson v. Celebrezze*, 460 U.S. 780, 792–93 (1983) ("[I]t is especially difficult . . . to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status."); *see also Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 668 (1966) (holding voting limitations based on wealth, race, creed, and color "are traditionally disfavored").

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

48

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

The President has repeatedly made clear that he views voting by mail as a threat to his reelection.[79] The President has falsely and repeatedly attacked vote-by-mail as creating "Tremendous potential for voter fraud," and as leading to "the greatest Rigged Election in history," "a free for all on cheating, forgery and the theft of ballots," and "THE END OF OUR GREAT REPUBLICAN PARTY."[80] He has also declared that election results must be announced the night of Election Day, though not all votes will have been processed and counted.[81] Suggestions to curtail the counting of ballots in the days after Election Day are particularly concerning where States, such as Plaintiff States Michigan and Wisconsin, cannot process mail-in ballots before Election Day, and where polling suggests that more of the President's supporters will plan to vote in person but voters identifying as Democrats plan to vote by mail.[82]

---

[79] *See* Amy Gardner & Josh Dawsey, *As Trump leans into attacks on mail voting, GOP officials confront signs of Republican turnout crisis*, Wash. Post (Aug. 3, 2020), https://wapo.st/31WozE5.

[80] Donald J. Trump (@realDonaldTrump), Twitter (Apr. 8, 2020, 5:20 AM), https://bit.ly/2DCbac2 (Ex. AA); (May 24, 2020, 7:08 AM), https://bit.ly/3bNSfbb (Ex. AA); (May 28, 2020, 6:00 PM), https://bit.ly/2FklJRq (Ex. AA); (May 27, 2020, 4:11 AM), https://bit.ly/3jU1eu2 (Ex. AA).

[81] Donald J. Trump (@realDonaldTrump), Twitter (July 30, 2020, 1:22 PM), https://bit.ly/2GGvzxZ (Ex. AA) ("Must know Election results on the night of the Election, not days, months, or even years later!").

[82] A poll of Wisconsin likely voters found a partisan difference in plans to vote by mail or in-person. *See* Marquette Law School Poll (Aug. 11, 2020)

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

49

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    Moreover, the COVID-19 pandemic has disproportionately impacted

2    particular minority communities that tend to vote for Democratic candidates.[83]

3    Measures that discourage mail-in voting and require voting in person, with the

4    attendant risks of contracting COVID-19, thus may be intended to discourage

5    people from voting who are unlikely to support the President.

6        These concerns, rooted in the President's own statements, are amplified by

7    the Postal Service's departure from its normal procedure in making these changes,

8    suggesting that "improper purposes are playing a role." *Vill. of Arlington Heights*

9    *v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *see also Arce v. Douglas*,

10   793 F.3d 968, 977 (9th Cir. 2015) (identifying factors such as the specific sequence

11   of events and the departure from normal procedures). The Postal Service departed

12   from its usual procedure in two ways. First, as detailed above, the Postal Service

13   declined to follow the procedural requirements of Section 3661, which would

14   otherwise have delayed implementation of these changes. And second, it rushed

15   these changes into effect immediately before an election, contrary to its ordinary

16   practice of *avoiding* changes immediately before an election. *See, e.g.*, USPS

17

18

19   _____

20   https://bit.ly/2ZiyNOt (67% of voters who identified as Republican planned to vote

21   in person, compared to 27% of Democrats; and 55% of voters who identified as

22   Democrats planned to vote by mail, compared to 15% of Republicans); *see also*

23   Alexa Corse, *Biden Supporters More Likely Than Trump's to Vote by Mail, Poll*

24   *Shows*, Wall. St. J. (Aug. 17, 2020), https://on.wsj.com/3bAfWn7.

25       [83] Ron Elving, *What Coronavirus Exposes About America's Political*

26   *Divide*, NPR (Apr. 12, 2020), https://n.pr/35fMQs4.

Postal Bulletin 22342, at 14 (July 26, 2012)[84] (suspending USPS network consolidations from September through December "[d]ue to the volume of high-priority mail predicted for the election as well as the holiday mailing seasons"); USPS Postal Bulletin 22449, at 4, 5 (Sept. 1, 2016) (announcing that "plans [were] in place from coast to coast to ensure the timely receipt, processing, and delivery of election and political mail" in response to concerns regarding service standard changes made in 2015).[85]

## b. The policy changes do not further a compelling government interest and are not narrowly tailored

The operational changes cannot survive strict scrutiny because they do not further a compelling government interest and are not narrowly tailored. The USPS has not publicly identified any compelling interest supporting its changes, much less how these changes are narrowly tailored to serve such an interest. Any asserted interest in some fiscal savings or efficiency gains is not compelling. *See, e.g.*, *Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015) ("Saving a few dollars is not a compelling interest . . . ."); *see also Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156 (9th Cir. 2019) (expressing skepticism that "protecting the public fisc is a compelling interest"). Even if financial interests could in some circumstances be compelling, here Postmaster General DeJoy testified to Congress that the USPS is not at risk of running out of funding at any time through the November 2020

---

[84] USPS Postal Bulletin 22342 (July 26, 2012), available at https://bit.ly/2RiePzf (Ex. BB).

[85] USPS Postal Bulletin 22449 (Sept. 1, 2016), available at https://bit.ly/3imYMMt (Ex. CC).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

51

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

election.[86] The former Deputy Postmaster General, Ron Stroman, also observed that whatever slight financial benefit USPS would gain from these changes is outweighed by costs of making such changes during a pandemic and on the eve of the general election.[87]

In short, there is no compelling interest that justifies the USPS's unprecedented interference with the constitutional authority of States to administer elections or the rights of voters to have their votes counted.

## C. The States Will Suffer Irreparable Injury Absent an Injunction

Injunctive relief is appropriate because the States have shown, on behalf of themselves and as *parens patriae* protecting the health and well-being of their residents, that "irreparable injury is *likely* in the absence of an injunction," *Winter*, 555 U.S. at 22 (emphasis in original); *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (to show likelihood of injury, moving party "need not further show that the action sought to be enjoined is the exclusive cause of the injury").

As an initial matter, the deprivation of procedural protection is itself irreparable harm. "The denial of . . . a [Section 3661] hearing, should one be required, is sufficient irreparable injury to support interlocutory injunctive relief, for it is clear that no hearing will be conducted and that the changes will continue unless enjoined." *Buchanan*, 375 F. Supp. at 1022, *aff'd in relevant part*, 508 F.2d at 266 ("[T]he District Court was correct . . . that plaintiffs had properly

---

[86] House Testimony, *supra* n.5 (01:08:57–01:09:10 of video) (USPS fiscally viable through August 2021).

[87] *See* Peter Granitz, *All Things Considered*, NPR (Aug. 20, 2020), https://n.pr/31TPVvH.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

52

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

established that there was a substantial threat of irreparable injury" as necessary to warrant preliminary injunctive relief.).

As users of the mail, the States have suffered and will suffer direct harms resulting from the frustration of their ability to administer mail-in voting in the upcoming election, as well as the administration of benefits and other state programs relying on prompt mail service, including the mailing of notices governed by statutory deadlines. Secretaries of State, election officials, benefit program administrators, and other state officers have testified to the cascading harms they will experience—and have already experienced—from these harms.

Widespread voter disenfranchisement is also precisely the type of irreparable harm that calls for injunctive relief. *See, e.g.*, *Sanchez v. Cegavske*, 214 F. Supp. 3d 961, 976 (D. Nev. 2016) ("It is clear that abridgment of the right to vote constitutes an irreparable injury."); *Cardona v. Oakland Unified Sch. Dist., Cal.*, 785 F. Supp. 837, 840 (N.D. Cal. 1992) ("Abridegment [*sic*] or dilution of a right so fundamental as the right to vote constitutes irreparable injury."); *Obama for Am.*, 697 F.3d at 436 ("A restriction on the fundamental right to vote . . . constitutes irreparable injury.").

Failing to issue an injunction will also cause irreparable harm to the health and well-being of millions of residents across the States. This includes veterans, persons with disabilities, and vulnerable or homebound people being subjected to significant delays in receiving lifesaving medications. *See supra* at pp. 17–18. Harms such as "pain, infection, amputation, medical complications, and death due to delayed treatment" are clearly irreparable. *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004). The same is true with regard to the hundreds of thousands of residents who rely on timely receiving public benefits and associated notifications through the mail. "[R]educed access" to public

benefits affecting food assistance and housing support is an irreparable injury to the persons it affects and to the States' ability to promote their financial security as well as the health and wellbeing of their residents. *Washington v. U.S. Dep't of Homeland Sec.*, 408 F. Supp. 3d 1191, 1221 (E.D. Wash. 2019). Mail delays also will have a devastating impact on small businesses that are more reliant on delivery than ever before. Although private "[e]conomic harm is not normally considered irreparable," *see California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018), the total loss of a business can suffice, because a small business, once gone, has no means of recovering what they have lost via money damages alone. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (threat that company might face bankruptcy or be driven out of business may constitute irreparable harm). And the States' loss of tax revenue from businesses that fail is irreparable. *See Washington v. Trump*, 441 F. Supp. 3d 1101, 1126 (W.D. Wash. 2020).

In sum, the States have shown a significant likelihood of irreparable injury to the States and their residents absent an injunction.

**D.     The Balance of Equities and Public Interest Strongly Favor the States**

The balance of equities and the public interest strongly favor injunctive relief. Because this lawsuit involves the government, these inquiries merge. *Drake's Bay Oyster*, 747 F.3d at 1092. As detailed above, the States have shown likely irreparable harm to their ability to administer elections and provide public benefits, and to their residents' ability to vote and receive time-sensitive mail, from life-saving medications to legal notices to benefit checks. Further, Congress has recognized that residents of the States have an interest in "ready access to essential postal services" and "the most expeditious collection, transportation, and delivery of important letter mail." 39 U.S.C. §§ 101(e), 403(b)(3). This "judgment of

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Congress, deliberately expressed in legislation," deserves special consideration in determining the public interest. *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001) (quoting *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 551 (1937)).

These injuries far outweigh any temporary harm to Defendants from a preliminary injunction. Defendants cannot plausibly claim harm by adhering to policies and practices that have been in place for years. *See Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017). Although reducing expenses is a reasonable objective, it cannot justify harms to the States and their residents when the USPS has acted unlawfully. *See, e.g.*, *Obama for Am.*, 697 F.3d at 434 (State's asserted interest in reducing administrative burdens did not justify burdens on voters). Even if an injunction might "temporarily frustrate" the USPS's ability to reduce costs while it addresses how to eliminate "unintended consequences" on "overall services levels,"[88] that temporary delay does not outweigh the very strong public interest here. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). Moreover, it is in the public interest to "curtail[] unlawful executive action." *Hawai'i v. Trump*, 859 F.3d 741, 784 (9th Cir. 2017), *vacated on other grounds by Trump v. Hawai'i*, 138 S. Ct. 377 (2017) (quoting *Texas v. United States*, 809 F.3d, 134, 187 (5th Cir. 2015)). Likewise, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Sammartano v. First Judicial Dist. Ct. in & for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002)); *see also Gulf Coast Mar. Supply, Inc. v. United States*, 218 F. Supp. 3d 92, 101 (D.D.C. 2016) ("The public interest is served both by ensuring that government agencies conform to the

_____

[88] *Path forward*, *supra* n.20 (Ex. F).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

55

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

requirements of the APA and their own regulations . . . ."). In short, in weighing the competing interests, including the public interests, the balance tips sharply in favor of preliminary relief.

### E. Nationwide Injunctive Relief Is Necessary and Appropriate

The harms caused by Defendants' unlawful changes to postal services are nationwide, and injunctive relief must be nationwide. The very purpose of the Postal Service is to help "bind the Nation together," 39 U.S.C. § 101(a), and to serve "as nearly as practicable the entire population of the United States," 39 U.S.C. § 403. Consistent with that mission, the Postal Service delivers vitally important time-sensitive mail across state boundaries in massive volumes every day. The Plaintiff States therefore seek nationwide relief.

"[N]ationwide or other broad injunctions are appropriate when necessary to remedy a plaintiff's harm." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 855 (9th Cir. 2020). "The scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Id.* (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (alternation marks removed)). The Postal Service's changes to the nature of postal services are substantially nationwide in scope. Delays in one state affect deliveries to other states, as documented in both declarations and other evidence in this case. *See* Olsen Decl. ¶¶ 3, 6 (Washington resident relying on mail order prescription service based in Portland); Stembridge Decl. ¶ 3 (80% of business's orders are sent out-of-state); Hall & Wisniewski, *supra* n.15 (postal trucks departing empty for cross-country travel). Even focusing narrowly on Election Mail, many absentee ballots are printed in one state and mailed directly to voters in other states, either because of the location of the printing company the State uses or because a voter needs an absentee ballot because they are temporarily out of state. *See, e.g.*, Rock

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

56

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Decl. ¶ 16 (Rhode Island's mail ballots printed in Everett, processed in Seattle, delivered to Boston, then trucked to Rhode Island); *id.* ¶ 17 (sending out-of-state to college students and military voters); Robin Thomas Decl. ¶¶ 3–4. Limiting relief to the Plaintiff States would not fully redress their harms.

Nationwide relief is also needed to provide complete relief to the Plaintiff States for the procedural harm they have suffered: deprivation of the right to comment on broad-based changes *before* implementation. 39 U.S.C. § 3661. Allowing these "transformative changes" to take effect in much of the country while the PRC considers whether they should be allowed to take effect would render the legally required notice and comment process a farce. The purpose of notice-and-comment requirements is "to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage, when the agency is more likely to give real consideration to alternative ideas." *State of N.J. Dep't of Env't Prot. v. U.S. Env't Prot. Agency*, 626 F.2d 1038, 1050 (D.C. Cir. 1980) (quoting *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 214–15 (5th Cir. 1979)). Permitting comment after a change has taken effect "is no substitute for the right of interested persons to make their views known to the agency in time to influence the [decision] making process in a meaningful way. . . . 'We doubt that persons would bother to submit their views or that the [agency] would seriously consider their suggestions after the regulations are a Fait accompli.' " *U.S. Steel*, 595 F.2d at 214–15 (quoting *City of New York v. Diamond*, 379 F. Supp. 503, 517 (S.D.N.Y. 1974)) (collecting cases); *see also Buchanan*, 375 F. Supp. at 1019 (USPS's unilateral implementation of nationwide change "denied [users of the mail] a very fundamental right—the opportunity for a hearing on the proposed change").

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

57

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Absent a preliminary injunction to restore and preserve the status quo ante nationwide, the Plaintiff States' ultimate remedy—compelling USPS to fulfill the procedural requirements the law requires—would lose much of its meaning. *Cf. D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 49 (D.D.C. 2020) ("[D]enial of nationwide relief at this preliminary stage could make it less likely that the plaintiffs get complete relief . . . in the end"). Nationwide preliminary relief is necessary to provide complete relief so that the States will not be left without a meaningful remedy.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant a preliminary injunction as detailed in the States' attached proposed order.

DATED this 9th day of September, 2020.

ROBERT W. FERGUSON
Attorney General

*/s/ Noah Guzzo Purcell*
NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
NATHAN K. BAYS, WSBA #43025
KRISTIN BENESKI, WSBA #45478
ANDREW R.W. HUGHES, WSBA #49515
CRISTINA SEPE, WSBA #53609
    *Assistant Attorneys General*
EMMA GRUNBERG, WSBA #54659
TERA M. HEINTZ, WSBA #54921
    *(application for admission forthcoming)*
KARL D. SMITH, WSBA #41988
    *Deputy Solicitors General*
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744
noah.purcell@atg.wa.gov
nathan.bays@atg.wa.gov
kristin.beneski@atg.wa.gov

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

58

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

andrew.hughes@atg.wa.gov
cristina.sepe@atg.wa.gov
emma.grunberg@atg.wa.gov
tera.heintz@atg.wa.gov
karl.smith@atg.wa.gov
   *Attorneys for Plaintiff State of Washington*


PHIL WEISER
Attorney General of Colorado

*/s/ Eric R. Olson*
ERIC R. OLSON, CO #36414
Solicitor General
Office of the Attorney General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508 6548
Eric.Olson@coag.gov
   *Attorneys for Plaintiff the State of*
   *Colorado*


WILLIAM TONG
Attorney General
State of Connecticut

*s/ Joshua Perry*
JOSHUA PERRY, #439166
Special Counsel for Civil Rights
Office of the Attorney General
165 Capitol Avenue
Hartford, CT  06106
(860) 808-5372
joshua.perry@ct.gov
   *Attorneys for Plaintiff State of*
   *Connecticut*


KWAME RAOUL
Attorney General State of Illinois

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

59

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*s/ Christopher G. Wells*

CHRISTOPHER G. WELLS
(ARDC #6304265)
Chief, Public Interest Division
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, IL 60601
(312) 814-1134
cwells@atg.state.il.us
    *Attorneys for Plaintiff State of Illinois*


BRIAN E. FROSH
Attorney General of Maryland

*s/ Jeffrey P. Dunlap*

JEFFREY P. DUNLAP
D. Md. #20846, Md. Bar #181210004
*Assistant Attorney General*
200 St. Paul Place
Baltimore, MD 21202
T: (410) 576-7906
F: (410) 576-6955
jdunlap@oag.state.md.us
    *Attorneys for Plaintiff State of Maryland*


DANA NESSEL
Michigan Attorney General

*s/ Christina Grossi*

CHRISTINA GROSSI (P67482)
Chief of Operations
Michigan Department of Attorney General
525 W. Ottawa Street
Lansing, MI 48933
    *Attorneys for Plaintiff State of Michigan*


KEITH ELLISON
Attorney General of Minnesota

*s/ Angela Behrens*

ANGELA BEHRENS, MN 0351076

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

60

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

| | |
|---|---|
| 1 | Assistant Attorney General |
| | 445 Minnesota Street, Suite 1400 |
| 2 | St. Paul, MN 55101-2131 |
| 3 | (651) 757-1204 (Voice) |
| | angela.behrens@ag.state.mn.us |
| 4 | *Attorneys for Plaintiff State of Minnesota* |
| 5 | |
| 6 | AARON D. FORD |
| | Attorney General |
| 7 | |
| | *s/ Heidi Parry Stern* |
| 8 | Heidi Parry Stern (Bar. No. 8873) |
| 9 | Solicitor General |
| | Office of the Nevada Attorney General |
| 10 | 555 E. Washington Avenue, Suite 3900 |
| | Las Vegas, NV 89101 |
| 11 | hstern@ag.nv.gov |
| 12 | *Attorneys for Plaintiff State of Nevada* |
| 13 | |
| | HECTOR BALDERAS |
| 14 | Attorney General |
| 15 | |
| | *s/ Nicholas M. Sydow* |
| 16 | Nicholas M. Sydow |
| | Civil Appellate Chief |
| 17 | Office of the New Mexico Attorney General |
| | 201 Third Street NW, Suite 300 |
| 18 | Albuquerque, NM 87102 |
| 19 | (505) 717-3571 |
| | nsydow@nmag.gov |
| 20 | *Attorneys for Plaintiff State of New Mexico* |
| 21 | |
| 22 | ELLEN F. ROSENBLUM |
| | Attorney General of the State of Oregon |
| 23 | |
| | *s/ James S. Smith* |
| 24 | JAMES S. SMITH, WSBA #14761 |
| | MICHAEL C. KRON |
| 25 | Special Counsel |
| | Oregon Department of Justice |
| 26 | 100 SW Market Street |

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

61

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Portland, OR 97201
Phone: (971) 673-3891
james.s.smith @doj.state.or.us
michael.c.kron@doj.state.or.us
    *Attorneys for Plaintiff State of Oregon*


PETER F. NERONHA
Attorney General of Rhode Island

*s/ Keith Hoffmann*
KEITH HOFFMANN, #9874
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI  02903
Tel: (401) 274-4400, Extension 1882
Fax: (401) 222-2995
khoffmann@riag.ri.gov
    *Attorneys for Plaintiff State of Rhode Island*


THOMAS J. DONOVAN, JR.
Attorney General

*s/ Eleanor Spottswood*
JOSHUA DIAMOND
Deputy Attorney General
ELEANOR SPOTTSWOOD
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3178
joshua.diamond@vermont.gov
    *Attorneys for Plaintiff State of Vermont*


MARK R. HERRING
Attorney General of Virginia

*s/ Michelle S. Kallen*
MICHELLE S. KALLEN, VSB #94542
CAROL L. LEWIS, VSB #92362

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

62

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
mkallen@oag.state.va.us
   *Attorneys for Plaintiff Commonwealth of
   Virginia*


JOSHUA L. KAUL
*Attorney General of Wisconsin*

*s/ Colin T. Roth*
COLIN T. ROTH, #1103985
*Assistant Attorney General*
Wisconsin Department of Justice
P. O. Box 7857
Madison, WI 53707-7857
(608) 264-6219
rothct@doj.state.wi.us
   *Attorneys for Plaintiff State of Wisconsin*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

63

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## DECLARATION OF SERVICE

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 9th day of September, 2020, at Tumwater, Washington.

*/s/ Jennifer D. Williams*
JENNIFER D. WILLIAMS
Paralegal

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 1:20-CV-03127-SAB

64

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744